WILLIAM R. BENSON & another *vs.* JOTHAM B. MONROE.

If a party, with full knowledge of the facts, voluntarily pays a demand unjustly made on him, and attempted to be enforced by legal proceedings, he cannot recover back the money, as paid by compulsion, unless there is fraud in the party enforcing the claim. and a knowledge on his part that the claim is unjust; although the party paying protests at the time that he is not answerable, and gives notice that he shall bring an action to recover the money back.

A vessel arrived at Boston in 1847, with alien passengers on board; after the pas

11 *

sengers were landed, the master refused to pay the head money, of two dollars for each of one hundred and forty passengers, demanded by the superintendent of alien passengers, under the statute of 1837, *c.* 238, § 3, which had been decided by this court to be constitutional and valid; whereupon the overseers of the poor commenced a suit, (under Rev. Stat. *c.* 46, § 28, and *St.* 1837, *c.* 238, § 6,) against the owners of the vessel to recover the penalty of two hundred dollars for each passenger, and attached the vessel in the sum of thirty thousand dollars The owners thereupon paid the head money demanded, and costs, under protest, and with notice that they intended to sue to recover it back: The statute of 1837, *c.* 238, § 3, was afterwards decided by the supreme court of the United States to be unconstitutional and void. It was held, that the owners could not maintain an action to recover back the head money and costs so paid.

THIS was an action of assumpsit, by the plaintiffs, as the owners of the ship Washington, to recover back the sum of $398.25, paid under protest by Benson, one of the plaintiffs, and master of said ship, on the 10th of January, 1848, to the defendant, as the superintendent of alien passengers for the city of Boston, appointed by the mayor and aldermen thereof, under the statute of 1837, *c.* 238. The action was tried before *Bigelow,* J., in the court of common pleas, when the following, among other facts, appeared.

On the 9th of December, 1847, the ship Washington, of Richmond, in Virginia, where the plaintiffs resided, prosecuting a voyage from Liverpool to Staten Island, (to land passengers,) and from thence to James River, came in collision with the ship Mary Frances, between George's and Nantucket Shoals, and put into Boston, in consequence of the injuries she received. She had on board one hundred and ninety alien passengers.

When the Washington arrived at quarantine, off Deer Island, the defendant went on board, and explained to the master the city ordinance prohibiting vessels with disease on board from going to the city; and some conversation also took place, relative to sending the passengers to New York in a vessel, which the master thought would be too expensive. The plan of landing the passengers on the island, and letting the ship be cleansed and proceed to the city, was talked of. The defendant informed the master that the expense of so landing the passengers, and taking care of them, would be about $100, which the master agreed to pay. The passengers

were accordingly landed, (a portion of them being taken at once to the hospital,) and remained on the island several days, and the ship was cleansed and went up to the city. When the ship was repaired, she proceeded to sea, without taking any of the passengers previously landed. The defendant, under the statute before mentioned, demanded head money for one hundred and forty of the passengers; but whether the demand was made before or after the passengers were landed, did not appear.

The master and consignees having refused to pay the head money demanded by the defendant, on the ground that they were exempted therefrom by the provisions of St. 1837, c. 238, § 5, as having made the port of Boston in distress, a suit was commenced against the owners on the 8th of January, 1848, by the overseers of the poor of Boston, to recover penalties to the amount of thirty thousand dollars, for landing passengers in contravention of the Rev. Sts. c. 46, § 28, and St. 1837, c. 238, § 6; and on this suit the ship was attached. On the 11th of January, the plaintiffs, by their attorney, paid the defendant, in settlement of this suit, the sum of $398.25 which included $280 head money, $100 for landing passengers, and the costs of the suit, for which the defendant gave the plaintiffs' attorney a receipt. And on the next day, the defendant, acting as the agent of the overseers, caused the attachment of the ship to be dissolved.

When the money was paid, the plaintiffs' attorney declared that it was paid under protest; that the plaintiffs would sue to recover it back; and the defendant, as the agent of the overseers, agreed, as a condition to the payment, to have the attachment dissolved, and also that a suit was to be brought for the recovery of the money, to test the validity of the claim. The defendant was desired, at the same time, by the plaintiffs' attorney, to sign a paper acknowledging the payment of the money by the plaintiff Benson, under protest, and with a reservation of his legal rights, and promising to repay the same to Benson, in whole or in part, on a suit to be brought within thirty days, if it should appear that he was not legally bound to pay the same to the defendant; but the defendant refused to sign the pape

The presiding judge instructed the jury, that the third sec-
tion of *St.* 1837, *c.* 238, authorizing the collection of head
money, was unconstitutional and void, and that the demand
thereof by the defendant, was illegal; and upon the question,
whether the money paid could be recovered back in this ac-
tion, he instructed them that if the defendant demanded of
Benson $280 head money, for alien passengers on board the
Washington, and Benson refused to pay the same, but landed
the passengers, and the overseers of the poor commenced an
action against the owners of the ship, to recover thirty thou-
sand dollars, for a violation of law in landing these passen-
gers, and Benson then agreed to pay the head money, on con-
dition that the defendant, acting as the duly authorized agent
of the overseers of the poor, would procure a discharge of the
suit, and for that purpose only, and the defendant did procure
such discharge, then the plaintiffs could not recover back the
sum paid, even though they protested against paying it, and
declared their intention to sue for it, unless the jury were
satisfied that the defendant, at the time of paying the money,
agreed with the plaintiffs to hold the money, in which case the
plaintiffs could recover the money of him, in case the pay-
ment should be held to have been unlawfully exacted.

The jury returned a verdict for the defendant, and the plain-
tiffs alleged exceptions.

*W. Sohier* and *J. Lowell*, for the plaintiffs. 1. The rul-
ing is incorrect. The circumstances of the case show such
compulsion, duress and inequality, as will enable the plain-
tiffs to recover the head money paid by them under protest.
And the fact, if warranted by the evidence, that such pay-
ment was made merely to relieve the compulsion or remove
the duress, will not destroy, but only illustrate their rights.
The parties were not on an equal footing. The overseers of
the poor had it in their power to enforce the suit for $30,000,
on which they had already attached the plaintiffs' vessel. And
this right gave them an unequal and superior position. *Valpy*
v. *Manley,* 1 Man. G. & S. 594; *Carter* v. *Carter,* 5 Bing. 406;
*Parker* v. *Great Western Railway,* 7 Man. & G. 253, 293;
*Close* v. *Phipps,* 7 Man. & G. 586; *Ashmole* v. *Wainwright,* 2

Ad. & El. N. R. 837; *Dew* v. *Parsons*, 2 B. & Ald. 562; *Pitt* v. *Coomes*, 2 Ad. & El. 459; *Snowdon* v. *Davis*, 1 Taunt. 359; *Richardson* v. *Duncan*, 3 N. H. 508; *Boston & Sandwich Glass Co.* v. *Boston*, 4 Met. 181; *Norris* v. *Boston*, 4 Met. 282, 284. All, or nearly all, the modern English cases, turn upon the question whether the payment was, in fact, voluntary There is no pretence that it was so in this case.

2. The payment of head money now in question was demanded and made by and under the authority of a law (*St.* 1837, *c.* 238,) which has *since* been pronounced unconstitutional. At the time the payment was made, the law was considered valid and would have been enforced by our courts, having been decided to be constitutional by this court, in *Norris* v. *Boston*, 4 Met. 282; but ·at the January term, 1849, of the supreme court of the United States, more than a year after this payment was made, that decision was reversed, and the law was declared invalid. 7 Howard, 283. It must therefore be an exception to the rule, that money paid under a mistake of law, cannot be recovered back; for to extend that rule to this case, would be to hold, that a private individual is obliged to be wiser than this court. It is analogous to the payment of money on a judgment which is afterwards reversed. See 1 Steph. N. P. 357; *Elliott* v. *Swartwout*, 10 Pet. 137; *Smith* v. *Sleap*, 12 Mees. & Welsb. 588.

*P. W. Chandler*, city solicitor, for the defendant. The plaintiffs cannot recover back the head money paid by them. 1. Because the payment was made with a full knowledge of all the facts in the case, and ignorance of the law will not entitle the plaintiffs to recover. The constitution is the supreme law of the land, and whatever is not in accordance with it, whether it be an act of congress or of one of the state legislatures, is void and not law. *Marbury* v. *Madison*, 1 Cranch, 137, 176; 1 Kent Com. 449. The constitution and the laws of congress are not foreign laws and therefore regarded as matters of fact, but domestic and supreme in all the states. 1 Greenl. on Ev. §§ 489, 490, and cases there cited. If, then, the plaintiffs knew all the facts in the case, and were ignorant ot the law only, and if the statute requiring the payment was

void from unconstitutionality, the right to inquire into that question was waived by payment, and the plaintiffs cannot recover. *Bilbie* v. *Lumley*, 2 East, 469; *Brisbane* v. *Dacres* 5 Taunt. 143, 152, 162; *Lowry* v. *Bourdieu*, 2 Doug. 468, 471; *Bize* v. *Dickason*, 1 T. R. 285; *Bromley* v. *Holland*, 7 Ves. 3, 23; *Elliott* v. *Swartwout*, 10 Pet. 137; *Mowatt* v. *Wright*, 1 Wend. 355; *Clarke* v. *Dutcher*, 9 Cow. 674; *Ladd* v. *Kenney*, 2 N. H. 340; *Haven* v. *Foster*, 9 Pick. 112.

2. Because the payment was voluntary, and not under such compulsion of law as will entitle the plaintiffs to recover the money back. The rule is, that whenever a party has an opportunity to plead and avail himself of a legal defence, and pays money, though under protest, he cannot recover it back; for the payment is not compulsory but voluntary. But where money is paid to release goods, or save them from execution, or any other summary process, and there is no opportunity to plead and defend, it may be recovered back. *Marriott* v. *Hampton*, 2 Esp. R. 546; *Knibbs* v. *Hall*, 1 Esp. R. 84; *Brown* v. *McKinally*, 1 Esp. R. 279; *Hamlet* v. *Richardson*, 2 Moore & Scott, 811; *Milnes* v. *Duncan*, 6 B. & C. 671, 679; *Rawson* v. *Porter*, 9 Greenl. 119; *Elliott* v. *Swartwout*, 10 Pet. 137; *Bates* v. *New York Insurance Co.* 3 Johns. Cas. 238; *Chase* v. *Dwinal*, 7 Greenl. 134; *Richardson* v. *Duncan*, 3 N. H. 508; *Ripley* v. *Gelston*, 9 Johns. 201; *Fulham* v. *Down*, 6 Esp. R. 26 *n; Payne* v. *Chapman*, 4 Ad. & El. 364; *Goodman* v. *Sayers*, 2 Jac. & W. 249; *Longchamp* v. *Kenny*, 1 Doug. 137; *Lindon* v. *Hooper*, Cowp. 414; *Preston* v. *Boston*, 12 Pick. 7, 13; *Amesbury Manufacturing Co.* v. *Amesbury*, 17 Mass. 461; *Torrey* v. *Millbury*, 21 Pick. 64; *Cobb* v. *Curtiss*, 8 Johns. 470; *White* v. *Ward*, 9 Johns. 232; *Wright* v. *Tower*, 1 Browne, Appx. 1; *Colwell* v. *Peden*, 3 Watts, 327; *Astley* v. *Reynolds*, 2 Stra. 915; *Forbes* v. *Appleton*, 5 Cush. 115. In this case an opportunity to plead and defend was given, by the suit which was brought by the overseers of the poor.

3. Because the payment was made under a contract; and if the consideration has failed or been adjudged illegal, the rule " *in pari delicto potior est conditio possidentis* " applies. The plaintiffs and the commonwealth may be regarded as in-

dividuals contracting under the constitution of the United States; the commonwealth granting the privilege of landing passengers, and the plaintiffs paying for that privilege head money. If the commonwealth had no power to grant the privilege or require any payment for it from the plaintiffs, and if the making of such an agreement was prohibited by the constitution, yet the plaintiffs waived the illegality of the contract, or while its legality was in doubt paid money under it, and cannot recover it back. *Drummond* v. *Deey*, 1 Esp. R. 152; *Andree* v. *Fletcher*, 3 T. R. 266; *Vandyck* v. *Hewitt*, 1 East, 96; *Howson* v. *Hancock*, 8 T. R. 575; *Bean* v. *Jones*, 8 N. H. 149; *Pearson* v. *Lord*, 6 Mass. 84. The distinction between *mala in se* and *mala prohibita* is now denied. *Farmer* v. *Russell*, 1 Bos. & Pul. 296; *Aubert* v. *Maze*, 2 Bos. & Pul. 371; *Clarke* v. *Shee*, Cowp. 197; *Mitchell* v. *Cockburne*, 2 H. Bl. 379.

METCALF, J. The court deem this a plain case. It is an established rule of law, that if a party, with a full knowledge of the facts, voluntarily pays a demand unjustly made on him, and attempted to be enforced by legal proceedings, he cannot recover back the money, as paid by compulsion, unless there be fraud in the party enforcing the claim, and a knowledge that the claim is unjust. And the case is not altered by the fact, that the party, so paying, protests that he is not answerable, and gives notice that he shall bring an action to recover the money back. He has an opportunity, in the first instance, to contest the claim at law. He has, or may have, a day in court; he may plead and make proof that the claim on him is such as he is not bound to pay. This circumstance distinguishes such a case from most of those which were cited for the plaintiffs. As was said by Gibbs, J., in *Brisbane* v. *Dacres*, 5 Taunt. 152, the party has an option, whether to litigate the question, or submit to the demand and pay the money. See also *Preston* v. *City of Boston*, 12 Pick. 13, 14; *Rawson* v. *Porter*, 9 Greenl. 119.

In *Brown* v. *McKinally*, 1 Esp. R. 279, a party, who was sued for old iron sold and delivered, paid the sum demanded, objecting, at the time, that the iron was not such as he con-

tracted for, but was of an inferior quality and less value, and giving notice to the vendor that payment was made without prejudice, and that a suit would be brought to recover back the overplus thus paid. On his bringing such suit, Lord Kenyon decided that it could not be maintained, and said, that to allow it would be to try every question twice; that the same legal ground, which would entitle the plaintiff to recover in that suit, would have been a good defence to the suit brought against him by the defendant; and that the plaintiff should have made his defence to that suit. This decision has been repeatedly recognized and confirmed by the courts in England. Two or three cases only need be cited In *Hamlet* v. *Richardson,* 9 Bing. 644, the plaintiff had paid a certain sum of money to the plaintiff, after action brought, with knowledge of the facts on which the demand was founded; and it was held that he could not recover it back. Tindal, C. J., referred to *Brown* v. *McKinally,* and also to *Milnes* v. *Duncan,* 6 Barn. & Cres. 679, where Holroyd, J., said, that money, paid after legal proceedings were instituted, could not be recovered back, if there was no fraud in the party receiving the money. The same doctrine was fully recognized by the court of King's Bench, in *Duke de Cadaval* v. *Collins,* 4 Adolph. & Ellis, 858, and 6 Nev. & Man. 324. In that case, it was decided that if a party, knowing that he has no cause of action, fraudulently arrests another, who pays money to get rid of the pressure of the arrest, the money so paid may be recovered back; on the ground that legal process was colorably and fraudulently used to enforce a fictitious demand. This principle seems to have been applied in the case of *Richardson* v. *Duncan,* 3 N. Hamp. 508, cited by the plaintiffs' counsel. But the case at bar does not fall within this principle. Here was no fraud; no attempt to plunder the plaintiffs by color of legal process. They should have contested the demand made on them, in the suit that was instituted against them; and having voluntarily adjusted that demand, and relieved their vessel from seizure, with a full knowledge, or means of knowledge, of all the facts of their case, they cannot now be permitted to disturb that adjustment.

*Judgment on the verdict for the defendant.*