Clement's Appeal from Probate.

---

PERCIVAL W. CLEMENT AND OTHERS' APPEAL FROM PROBATE.

*B* indorsed notes for *H*, at the request of *G*, his father, and on *G's* oral promise to save him harmless. *B* afterwards had the notes to pay. *H* afterwards made a compromise with his creditors at forty cents on a dollar. *B* signed the compromise agreement at *G's* request and on his promise that if he would do so he would pay him the balance of his claim. Afterwards, in pursuance of this arrangement, *G* procured for *B* a note executed by *H* for the balance, which *G* guarantied by a writing on the back of it, which he signed. *G* soon after died. Held—

1. That the first promise of *G* to save *B* harmless if he would indorse *H's* notes, was void under the statute of frauds because not in writing.
2. That the promise of *G* to pay the balance of *B's* claim if he would sign the compromise agreement, was void as in fraud of the other creditors.
3. That the last note being given in pursuance of the fraudulent arrangement was void, and *G's* guaranty of it therefore of no effect.

[Argued January 8th—decided March 27th, 1885.]

APPEAL from a probate decree allowing the administration account of Charles H. Brainard as executor of James

M. Goodwin, deceased; taken to the Superior Court in Hartford County. The reason of appeal assigned was the allowance by the court of a note of $2,375.61 and interest, as a part of the account. The following facts were found by the court:—

The appellants are the children of Henry W. Goodwin, deceased, who was a son of the testator. Henry W. died in 1876; the testator in 1870. The testator by his will gave a portion of his estate to Mr. Brainard, in trust, "to pay over the use, income and rent thereof, from time to time, at his discretion, to my son Henry W. Goodwin, for and during the period of his natural life, for the comfort and support of himself and family; and at his decease to pay and deliver the same in equal portions to his children."

In 1861 Henry W. Goodwin became pecuniarily embarrassed and compromised with his creditors, paying them thirty-five or forty cents on a dollar, taking a discharge of the balance. Mr. Brainard was then an accommodation indorser of Goodwin's paper to the amount of $3,800, which amount he was obliged to pay. These notes were indorsed by Mr. Brainard for the benefit of Henry W. Goodwin, at the request of James M. Goodwin, the testator, and upon his verbal promise to save him harmless from any loss by reason of such indorsements. Brainard signed the compromise agreement and received the amount named in it, and discharged the balance of his claim against Henry W. Goodwin.

Some five or six years afterwards James M. Goodwin procured a note for the balance signed by Henry W. Goodwin payable to Brainard, and delivered it to him. James M. Goodwin wrote at the bottom of that note in pencil, in substance as follows:—"I hereby guarantee the above note with interest;" but whether the words "value received" were on it the witness could not state. The guaranty was signed by him.

Mr. Brainard testified that there were other matters included in the consideration of that note, but he did not show what they were or how much they amounted to. I

therefore find that the consideration of the note was substantially the balance of the old claim as stated above.

On the 1st day of April, 1872, Mr. Brainard paid himself the amount of that note, $2,375.61, from the income of the estate, and charged the same to the account of Henry W. Goodwin, said Goodwin assenting to the charge and never complaining of it afterwards.

Mr. Brainard claimed that the amount of that note was virtually a claim against the estate. But I find that it was never presented by him to himself as executor, as a claim against the estate, was not included in any administration account presented to the court of probate, and was never charged to the estate, but was charged in his account with H. W. Goodwin, against the income belonging to him under the will.

The income from time to time was paid over by Mr. Brainard to Henry W. Goodwin, who disposed of it as he pleased, and there was no evidence that his family ever complained that it was improperly expended or that their wants were not sufficiently provided for.

Brainard signed the compromise papers on the promise of the testator that if he would sign the discharge the balance due him should be paid; and the note was given pursuant to that arrangement.

The testator in that matter acted in the interest of Henry W. Goodwin as well as in his own, but I do not find that he acted as his agent, or that Henry W. Goodwin in any manner made such an agreement until at or about the time he signed the note in 1867 or 1868.

There was no consideration for the promise and guaranty otherwise than as above stated.

Upon these facts the case was reserved for the advice of this court.

*C. E. Perkins*, for the appellants.

1. This guaranty is void for want of a consideration. It is well settled that a guaranty, to be valid needs a consideration as much as any other promise. 1 Parsons on Con-

tracts, 206, 496; De Colyar on Guaranties, 22; *Colburn* v. *Tolles*, 14 Conn., 341. The usual consideration is the advance of money or other property made to the debtor, at the time of the receiving the note; but in this case there was nothing given by Brainard or received by H. W. Goodwin at the time of giving the note and executing the guaranty. The appellee may claim that the promise of J. M. Goodwin, made before 1861, that he would indemnify Brainard if he would indorse for H. W. Goodwin, was a consideration for this guaranty in 1867. But it does not appear that this guaranty was in fact given in pursuance of that agreement, or that such was the consideration. And that promise, being merely a *verbal* one, was not binding or legal. It was a promise to Brainard that if H. W. Goodwin did not pay the debt, he, J. M. Goodwin, would do so, and was therefore void under the statute of frauds. A void promise cannot be a sufficient consideration for another promise, nor is a mere moral liability which never was a legal one a good consideration. *Cook* v. *Bradley*, 7 Conn., 62; *North* v. *Forest*, 15 id., 405; 1 Parsons on Cont., 360, note 1.

2. The note itself, the payment of which was guaranteed, was void, and a mere guaranty of a void note is itself void. The note was void for want of consideration, because the whole debt, for a part of which it was given, had been voluntarily discharged by Brainard. It is now well settled that although a discharge in bankruptcy leaves sufficient liability remaining to be a consideration for a new promise, yet that it is different in the case of a voluntary discharge. This distinction is very clearly expressed by SHIPMAN, J., in the case of *Merriman's Estate*, 44 Conn., 590. See also—*Hale* v. *Rice*, 124 Mass., 299; *Warren* v. *Whitney*, 24 Maine, 561; *Shepard* v. *Rhodes*, 7 R. Isl., 474; *Stafford* v. *Bacon*, 1 Hill, 533, and 2 Hill, 353; *Ingersoll* v. *Martin*, 58 Maryl., 67. The note was also void because given in pursuance of a promise to pay, which was in fraud of the other creditors. This was so held in the former case between the same parties. 49 Conn., 523. Speaking of this same note the court says: "Practically Brainard treated it as made for and in

behalf of H. W. Goodwin, and took the note of the latter in fulfillment of that promise. We must regard it, therefore, as a transaction with Henry W. Goodwin, and contrary to the rule of law which forbids one creditor under similar circumstances from contracting for a private advantage not accorded to the other creditors. *The note, therefore, was not collectible.*" It must be admitted, therefore, that the note, the payment of which J. M. Goodwin is said to have guaranteed, was void, both as fraudulent, and without any consideration. And it hardly needs any argument to prove that to recover upon a guaranty of a debt, it must first be shown that there is a debt to guarantee. DeColyar on Guaranties, 39; *Mountstephen* v. *Lakeman*, L. Reps. 7 Q. B., 196; *Same Case*, L. Reps., 7 House of Lords Cas., 24.

3. The guaranty being made in pursuance of an agreement to pay Brainard the balance of his claim if he would pretend to discharge it on payment of what was received by the other creditors of H. W. Goodwin, was void as a fraud upon them and against public policy. Parsons on Bills, 216; *Harvey* v. *Hunt*, 119 Mass., 283; *Breck* v. *Dill*, 4 Sandf., 79; *Babcock* v. *Dill*, 43 Barb., 577, 585; *Yeomans* v. *Chatterton*, 9 Johns., 295; *Bastian* v. *Dreyer*, 7 Misso. Ap., 332; *Hall* v. *Dyson*, 16 Jurist, 270; U. S. Bankrupt Act, § 5131.

*A. P. Hyde*, for the appellee.

1. The guaranty of James M. Goodwin was given upon sufficient and legal consideration. That the indorsement by Mr. Brainard of Henry W. Goodwin's notes, at the request of James M. Goodwin and upon his express promise to save Mr. Brainard harmless from any loss by reason of such indorsements, was a sufficient consideration for such promise, cannot be questioned. Mr. Brainard assumed a liability relying upon an express promise for indemnity from James M. Goodwin. But it was claimed by counsel in the court below, and may be claimed here, that this promise of James M. Goodwin was one to pay the debt of another and therefore required by the statute of frauds to be in

writing; that Henry W. Goodwin, the maker of the note, was really the principal and James M. Goodwin the surety, and so, when Henry W. Goodwin failed and Mr. Brainard was obliged to pay the notes, James M. Goodwin might have repudiated his agreement to indemnify Mr. Brainard. Admitting for the sake of the argument that this is so, this court will not impute it as a fault to James M. Goodwin that he recognized his verbal obligation to the same extent as though it had been in writing. He was certainly under a moral obligation to do so, and saw fit to do so as an honest man. It was his privilege if not his duty to perform his agreement, and it does not lie in the mouth of his heirs now to claim that he ought to have defrauded his relative and friend, who had relied upon his promise, by repudiating his plighted word. If James M. Goodwin had been sued upon this promise in a court of law and by the pleadings had admitted the agreement, such admission would have taken the case out of the statute. 1 Dutton's Swift's Digest, 260. It was the right of James M. Goodwin and his only, to insist upon or waive the bar of the statute. After Henry W. Goodwin had failed and Brainard had paid the notes, James M. Goodwin recognized his liability to repay Brainard and save him harmless from any loss by reason thereof. This could be done only in one of two ways. Either James M. Goodwin should first pay all the notes and take them from Brainard, in which case he himself would sign the compromise paper, or Brainard should sign the compromise papers, receive the percentage and release the notes, James M. Goodwin agreeing to afterwards pay him the balance remaining due. It is evident that it made no difference to the creditors of Henry W. Goodwin or to Henry W. Goodwin himself or to Mr. Brainard, which course should be taken. Brainard received the same percentage as the other creditors and the notes were fully discharged and surrendered, and he received no additional security to what he had before, which was the promise of James M. Goodwin to save him from loss, or in other words to pay the balance. Various cases are cited to show that where a

claimant is induced to sign compromise papers by an agreement with a third party to pay the balance of his claim, such agreement is void, and the appellants cite *Yeomans* v. *Chatterton*, 9 Johns., 295, and other cases of similar import. These cases, as we conceive, have no bearing upon this case. They are cases where the parties so promising to pay the undischarged balance were not previously holden, but were mere volunteers, and gave to the creditor signing the compromise papers an additional and independent security and so operated as a fraud on the other creditors. In a note to the case of *Lewis* v. *Jones*, 4 Barn. & Cress., 506, this matter is fully discussed and we quote: "There is another large class of cases in which it has been held that a person joining other creditors in compounding with a debtor, or signing a bankrupt's certificate, cannot lawfully stipulate for any benefit to himself beyond that which the other creditors receive; whether that benefit be given by the debtor himself or any third person for his relief. *Smith* v. *Bromley*, 2 Doug., 695; *Cecil* v. *Plaistow*, 1 Anstr., 202; *Cockshott* v. *Bennett*, 2 T. R., 763; *Jackson* v. *Lomas*, 4 T. R. 166; *Feise* v. *Randall*, 6 T. R., 146; *Jackman* v. *Mitchell*, 13 Ves., 581; *Leicester* v. *Rose*, 4 East, 372; *Welles* v. *Girling*, 1 B. & B., 447; *Jackson* v. *Davison*, 4 B. & A., 691. But all those decisions related to new securities given as a consideration for signing the composition deed or certificate, and proceeded on the ground that the advantage gained by the particular creditor was a fraud upon the others, and they do not appear applicable to securities existing before the negotiations for a composition. See *Thomas* v. *Courtenay*, 1 B. & A., 1." See also 2 Chitty on Contracts, (11 Am. ed.) 1054.

2. The promise of James M. Goodwin to pay the balance due after the discharge of Henry W. Goodwin, was an original promise and not collateral, and not within the statute of frauds. The original notes of Henry W. Goodwin were indorsed by Brainard solely upon the faith and credit of the promise of James M. Goodwin to save him harmless from any loss. After Henry W. had failed and

Brainard had been compelled to take up these notes held by third parties, at the request of James M. Goodwin, he released Henry W. upon receiving a percentage of the debt, and James M. agreed to pay the balance due. This brings the case clearly within the principles laid down in the case of *Packer* v. *Benton,* 35 Conn., 343. In that case the plaintiffs were large creditors of Filley & Co. Filley & Co. became insolvent and compromised with their creditors. The defendant Benton upon certain considerations, (viz.: receiving the assets of Filley & Co., and certain advances from the plaintiffs to enable him to effect a compromise with the other creditors) promised the plaintiffs by parol to pay to them seventy-five per cent. of their claim against Filley & Co. The plaintiffs released Filley & Co. from their debt. The advances were repaid, and a suit at law was brought against Benton on his verbal promise to pay the plaintiffs seventy-five per cent. of their claim against Filley & Co. Objection was made, 1st, that the promise of Benton to pay the debt of Filley & Co. was not in writing and therefore void under the statute of frauds; and 2d, that no action at law could be maintained under such an agreement even if in writing. This court resolved both questions in favor of the plaintiffs, and they recovered. In that case it also appeared that the promise of the defendant was to pay and ·"*guarantee*" the debts to the plaintiffs, and it was held that the word "*guarantee*" should not be taken in a technical sense, and did not imply under the circumstances of that case that he was a mere surety, but he was to be regarded as a principal debtor.

3. Whatever objection could have been raised to the form of the agreement of James M. Goodwin to pay the balance due Mr. Brainard, so surrendered and discharged to Henry W. Goodwin, such objection was removed when James M. Goodwin delivered to Mr. Brainard, in 1867 or 1868, the note of Henry W. with his written guaranty thereon. It is found that "Brainard signed the compromise papers on the promise of the testator that if he would sign the discharge the balance due him should be paid; and the note

was given pursuant to that arrangement." This clearly shows that the agreement, which had previously been by parol, was then reduced to writing. But here we are met with the objection that the note so delivered and guaranteed was the note of H. W. Goodwin. In reply we say there can be no claim or pretense that this note of H. W. Goodwin was given in pursuance of any agreement made with him before or at the time of the execution of the compromise papers, and therefore it was no fraud on the other creditors. In fact the court says, "I do not find that Henry W. Goodwin in any manner made such an agreement until at or about the time he signed said note in 1867 or 1868." And it is found that "some five or six years afterwards James M. Goodwin procured a note for the balance signed by Henry W. Goodwin, payable to Brainard, and delivered it to him, *and guaranteed it.*" Therefore the giving of this note by Henry W. or its reception by Mr. Brainard can in no sense be regarded as fraudulent. But we are again met with the objection that the note of Henry W. Goodwin for the discharged balance could not be enforced in a court of law against him. And we are referred to a number of cases showing that, when a part of a debt has been voluntarily discharged under a compromise, the existence of the unpaid portion of the debt is not a sufficient legal consideration for a promise to pay it. We have in this case no occasion to discuss the force of those decisions. That a party who has been discharged under a compromise *may*, if he sees fit and is able, *pay* the amount so discharged will not be disputed. In *Stafford* v. *Bacon*, 1 Hill, 532, one of the cases relied upon by our opponents, the court say, on page 539 :— " When a debtor is voluntarily and fairly discharged by his creditors, it must be left to his option whether he will pay. Being an honest man and becoming able, payment would be a matter of course." Having a right to pay, a promise to pay, even though it could not be enforced in a court of law, cannot be held a violation of any legal or moral rule. But the question here is not whether this note could be enforced against Henry W. Goodwin or his estate; it is simply

whether the guaranty of James M. Goodwin is valid and binding. This *guaranty was given*, as is found, pursuant to said arrangement that James M. Goodwin would pay the balance if Brainard should sign the compromise papers and discharge Henry W. from this balance. By the guaranty James M. agreed that he would pay the amount represented by the note, in case Henry W. should either refuse, or be unable, or for any other cause fail to pay it. The note was not paid by Henry W. Goodwin, though it appears that he was willing to pay and supposed he had paid it. If James M. Goodwin had, in pursuance of his agreement to pay this balance, brought to Brainard a note of a third party for the amount due, and guaranteed it, and after it had been accepted by Brainard it had turned out that the note given was a forgery, yet Mr. Goodwin would have been liable on his guaranty. The note was received as security for James M. Goodwin's liability, and not for any other purpose.

4. Mr. Brainard has lost no right to claim this note against the estate by any laches of his. That he presented this note against the estate in due season is found. His reasons for not charging it in his first and second accounts are so fully found that they need no discussion. The allowance of the charge in the final account appealed from was, we think, required, not only by every rule of honesty, but by the strictest construction of the rules of law, and must be sustained.

LOOMIS, J. We have experienced considerable difficulty in determining the legality of the claim in suit, owing to the uncertainty that exists as to its precise nature and foundation. The argument in its support, ingenious and able though it was, left us still in doubt whether the claim of the appellee was to be predicated upon the last transaction between the parties, namely, the written guaranty of the testator appended to the note of Henry W. Goodwin, or upon the verbal promise by the testator to the appellee, made five or six years before, that he would pay in full Mr. Brainard's claim against Henry W. Goodwin if the

former would, with the other creditors of the latter, sign a compromise agreement accepting forty cents on the dollar in full satisfaction, or upon the first verbal promise of the testator, made still earlier, to save the appellee harmless if he would indorse the notes of Henry W. Goodwin.

Without stopping to determine at present which of these diverse foundations should be selected, we will briefly examine each, for, if it shall be found that neither can furnish validity to the contract, the claim must be disallowed. We will discuss the questions in the inverse order from that given above.

1. Was the verbal promise of James M. Goodwin to save Mr. Brainard harmless if he would indorse the notes of Henry W. Goodwin, valid?

The answer will depend upon another question, namely, was James M. Goodwin to be the principal debtor, primarily liable upon his own obligation, or was he undertaking to secure the performance by Henry W. Goodwin of his promissory notes to Mr. Brainard? If the former is the true construction, then the promise was not within the statute of frauds; but if we adopt the latter view, it was within the statute, and, not being in writing, was void.

If we look first only at the form of the promise as found by the court, that if Brainard would indorse the notes of Henry W. Goodwin for his benefit the testator "would save him harmless from any loss by reason of such indorsements," it would seem pretty clear that the parties meant simply that the testator would reimburse Brainard for such sums as he might be compelled to pay as indorser by reason of the failure of Henry W. Goodwin as maker to pay his notes when due. This manifestly would be, on the part of the testator, a promise collateral to the liability of Henry W. Goodwin and therefore within the statute requiring it to be in writing. We reach this result, considering the promise divorced from the other circumstances. If now we take the latter also into consideration, we find the three parties concerned all concurring in such a construction of the transaction. The appellee from the first consistently and

persistently has followed Henry W. Goodwin and his estate with this claim, never once resorting to James. M. Goodwin during his life, nor against his estate till many years after his decease, when every other resource had failed, and then the claim as presented was on a collateral undertaking by the testator in the form of a guaranty, which we will further discuss in another connection. The conclusion is irresistible that the first promise was within the statute of frauds, and therefore of no validity.

But it has been suggested, in behalf of the appellee, that only James M. Goodwin could take advantage of the statute and that he could waive its benefit. The proposition needs qualification. True it is that while living he alone could take advantage of the fact that the agreement was not in writing, and also it could have been waived by him; but only in a particular mode; that is to say, had he been sued on the agreement, inasmuch as a compliance with the statute need not have been alleged in the complaint, there were under the rules of pleading and evidence divers ways of excusing the non-production of a written agreement. He might have suffered a default, or directly admitted the agreement, or it might have been admitted indirectly by pleading a tender, or under the general issue by failing to object to parol evidence and by omitting to call the attention of the court to the insufficiency of the evidence. 1 Swift's Digest, Revised Ed., 260; *Martin* v. *Sweet*, 66 N. York, 206. But the testator was never sued upon the agreement and had no opportunity to waive the objection, and when he died the right to insist upon a compliance with the statute did not die with him, but the agreement was left just as it was when made, with all its infirmities unhealed, of which the representatives and devisees of the deceased may now take advantage with the same effect and success as he might have done while living.

It was further suggested during the argument, that even if the agreement was within the statute, still it had the effect to impose on the promiser a moral obligation to indemnify Brainard, which would carry sufficient vitality

into the subsequent promises to support them by way of furnishing a consideration. We might accept this idea if a moral obligation resting merely in the forum of conscience was identical with that moral obligation which in the law furnishes a sufficient consideration for a subsequent promise ; but the two things are not identical, for it is well settled now that the latter can include only those cases in which there has been a legal right which has become devoid of a legal remedy. 1 Smith's Leading Cases, 268 ; *Cook* v. *Bradley*, 7 Conn., 63 ; *North* v. *Forest*, 15 Conn., 405.

Our conclusion is that the first transaction was not binding as an agreement and that it furnished no good consideration for the subsequent promises.

2. Was the verbal promise of James M. Goodwin valid, to pay Brainard in full if he would, with other creditors of Henry W. Goodwin, sign a composition agreement to accept a specified sum in discharge of the claim?

A creditor who unites with others in such an agreement cannot at the same time be permitted to secure to himself secret advantages which the other creditors do not enjoy, because thereby, in effect, he falsely represents that he comes in under the same terms with the others while in reality he is getting more. No contract therefore, verbal or written, by the debtor or a third person, to pay money or do any other valuable thing on such a consideration, can be enforced. 1 Parsons on Bills, 216 ; *Harvey* v. *Hunt*, 119 Mass., 283 ; *Yeomans* v. *Chatterton*, 9 Johns., 295 ; *Breck* v. *Cole*, 4 Sandf., 79 ; *Babcock* v. *Dill*, 43 Barb., 577, 585 ; *Bastian* v. *Dreyer*, 7 Misso. App., 332 ; *Pinneo* v. *Higgins*, 12 Abb. Pr. (N. Y.), 334 ; *Feldman* v. *Gamble*, 26 N. Jer. Eq., 494 ; *Knight* v. *Hunt*, 5 Bing., 432. We have confined our citations mostly to cases where agreements with third parties were held void.

The view we have taken above renders unnecessary a discussion of the question whether the promise under consideration was an original one, not within the statute of frauds, as claimed by the appellee, or a collateral promise, within the statute, as claimed by the appellants. The form

of the promise by itself considered favors the first view, while the subsequent acts and conduct of the three parties, all recognizing Henry W. Goodwin as principal debtor and James M. as mere guarantor, favor the latter claim.

3. We proceed next to consider the only remaining question—whether the estate of James M. Goodwin is liable upon his written guaranty of the note of Henry W. Goodwin.

This note and guaranty, though executed several years subsequently to the verbal promise we have just been considering, were in fact given for the sole purpose of securing the performance of that promise; for the finding of the court is explicit that "Brainard signed the compromise papers on the promise of the testator that if he would sign the discharge the balance due him should be paid; and the note was given pursuant to that arrangement." And in another connection it is found that the consideration of the note guaranteed was substantially the balance of the old claim.

It would seem, therefore, that in legal contemplation the last transaction is to be regarded as contemporaneous with the preceding one; the years intervening have no more significance than if they were only minutes; in short, the two transactions became in law one and the same; both were based on one and the same illegal consideration and were permeated with the same fraud.

But the counsel for the appellee makes a very ingenious argument to extricate Henry W. Goodwin from all participation in the fraud and to divorce the note wholly from the fraudulent arrangement concerning the composition, in order to make the act of giving the note appear as if prompted solely by a conscientious desire to pay the balance of his debt, though fairly and legally discharged; and the following citation was made from the case of *Stafford* v. *Bacon*, 1 Hill (N. Y.), 532, as if it fitly characterized the act:—" When a debtor is voluntarily and fairly discharged by his creditors, it must be left to his option whether he

will pay. Being an honest man and becoming able, pay-
ment would be a matter of course."

We most heartily commend this principle, but regret that
we cannot so interpret the act in question. The discharge
was not a fair and voluntary one, but it was purchased with
the promise of a peculiar advantage to Brainard alone.
The giving of the note was not the exercise of a mere
option to pay a discharged debt, but was constrained by the
previous agreement between the father of the debtor
and the creditor. The only foundation for the argument
we are considering is found in the last paragraph of the
finding. After stating the arrangement for compromise
and the fact that the note was given pursuant to it, the
court adds:—"The testator in that matter acted in the
interest of Henry W. Goodwin as well as in his own, but I
do not find that he acted as his agent, or that Henry
W. Goodwin in any manner made such an agreement until
at or about the time he signed said note in 1867 or 1868."

It will be noticed that this is cautiously worded; it
amounts only to a statement that no finding is made as to
Henry W. Goodwin's participation in the composition
arrangement prior to 1867 or 1868. Both Henry W. and
James M. Goodwin having deceased before the hearing,
direct evidence could not easily be obtained. But the find-
ing does contain a clear implication that when Henry W.
Goodwin gave the note he did know all about the arrange-
ment made by his father (the testator) in his behalf and
gave the note in fulfillment of the plan and purpose previously
formed. The act of Henry W. Goodwin has no likeness at
all to that assumed in the argument.

But we may well forbear further discussion of this point,
for the character of the note and the act of Henry W.
Goodwin in giving it was determined by this court when
the same parties of record were last before it. *Clement's
Appeal from Probate*, 49 Conn., 519. CARPENTER, J., in
giving the opinion of the court in that case, says, (p. 532):
—" The executor was a creditor and signed the composition
agreement. Afterwards this note was given for the balance

of that indebtedness to Mr. Brainard. Had it been given pursuant to an express or implied agreement with the debtor it would have been void. But it is claimed that Mr. Brainard signed the agreement at the request of the testator and upon a promise by him that the balance of his claim should be paid. We have no occasion now to inquire whether Mr. Brainard could have enforced that promise against the testator, as he has not attempted to do so. Practically he treated it as made for and in behalf of H. W. Goodwin and took the note of the latter in fulfillment of that promise. We must regard it, therefore, as a transaction with Henry W. Goodwin, and contrary to the rule of law which forbids one creditor under similar circumstances from contracting for a private advantage not accorded to the other creditors. The note, therefore, was not collectible."

But in endeavoring to show the true position of Henry W. Goodwin, we should not lose sight of the more important fact that the guaranty in suit given by the testator to the appellee is the direct fruit of the illegal promise made by the former to the latter to procure his signature to the composition deed, and whatever we may think of Henry W. Goodwin's participation we must on principle deny the right to enforce this security. The authorities previously cited (to which many more might be added) clearly show that when a claimant is induced to sign compromise papers by an agreement with a third party to pay or secure the balance, such agreement in whatever form it is made is utterly void.

But the counsel for the appellee makes another distinction in order to deliver this case from the principle of those authorities, which it is claimed apply only to new securities where the third party was not previously holden, and in support of the distinction the note to the case of *Lewis* v. *Jones*, 4 Barn. & Cress., 506, is cited, which is as follows:— " There is another large class of cases in which it has been held that a person joining other creditors in compounding with a debtor, or signing a bankrupt's certificate, cannot

lawfully stipulate for any benefit to himself beyond that which the other creditors receive; whether that benefit be given by the debtor himself or any third person for his relief. *Smith* v. *Bromley*, 2 Doug., 695; *Cecil* v. *Plaistow*, 1 Anstr., 202; *Cockshott* v. *Bennett*, 2 T. R., 763; *Jackson* v. *Lomas*, 4 T. R., 166; *Feise* v. *Randall*, 6 T. R., 146; *Jackman* v. *Mitchell*, 13 Ves., 581; *Leicester* v. *Rose*, 4 East, 372; *Welles* v. *Girling*, 1 B. & B., 447; *Jackson* v. *Davison*, 4 B. & A., 691. But all those decisions related to new securities given as a consideration for signing the composition deed or certificate, and proceeded on the ground that the advantage gained by the particular creditor was a fraud upon the others, and they do not appear applicable to securities existing before the negotiations for a composition. See *Thomas* v. *Courtnay*, 1 B. & A., 1." Were there occasion to adopt and apply such a distinction we might suggest some qualifications as to the duty and rights of the composition creditor in such case. But assuming the principle to be entirely correct as stated, it will suffice for the purposes of this case to say that the facts do not bring the case within the distinction relied upon. The securities in question were new and the direct product of the illegal agreement, and, as we have shown, there was no previous legal liability of any kind which could have been enforced against the testator.

The legal principles that govern guaranties suggest several other objections to a recovery in this case, but upon the view we have taken they are not necessary to a decision of the case, and we leave them out of the discussion.

We advise the Superior Court to reverse the decree of the court of probate allowing the note for $2,375.61 and interest, contained in the account of the executor.

In this opinion the other judges concurred.