JOHN HARTLEY, DEFENDANT IN ERROR, v. CORNELIUS
SANDFORD, PLAINTIFF IN ERROR.

Submitted July 9, 1901—Decided November 15, 1901.

The defendant's son was indebted to M., who desired additional se-
curity. The defendant thereupon applied to the plaintiff to become
surety for the son, and promised to reimburse him if he was com-
pelled to pay the debt. Accordingly the plaintiff became surety,
and afterwards was obliged to pay the debt. *Held*, in an action
on the promise, that it was within the statute of frauds as a
"special promise to answer for the debt, default or miscarriage of
another."

On error.

For the plaintiff in error, *John B. Humphreys.*

For the defendant in error, *Zebulon M. Ward.*

The opinion of the court was delivered by

DIXON, J. The material facts in this case, as disclosed by
the record, are that the defendant's son was indebted to M.,
who desired additional security; that thereupon the defendant
applied to the plaintiff to become surety for the son, and prom-
ised him that if he was compelled to pay the debt, he (the
defendant) would reimburse him; that accordingly the plaint-
iff became surety for the son, and subsequently was obliged to
pay the debt. This suit was brought upon the promise, which
was oral only.

It appears that at the trial in the Passaic Circuit the jury
were instructed to find for the plaintiff if they were satisfied
the promise had been made, but the question as to the legal
sufficiency of the promise was reserved and certified to the
Supreme Court, which afterwards advised the Circuit that the
promise was valid, and thereupon judgment was entered on
the verdict.

In this court error has been assigned on the charge at the

Circuit, as well as on the advisory opinion of the Supreme Court, but there being no bill of exceptions presenting the charge, the assignment of error respecting it is futile and must be disregarded.

The assignment upon the opinion of the Supreme Court is legal, and presents the only question now before us, which is, whether the plaintiff's suit can be maintained, in view of our statute "that no action shall be brought to charge the defendant upon any special promise to answer for the debt, default or miscarriage of another person, unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the person to be charged therewith or some other person thereunto by him or her lawfully authorized."

The advice of the Supreme Court was based upon its opinion that, under the adjudications in this state, the promise of one person to indemnify another for becoming surety of a third is not within the statute. The cases cited in that opinion to support this view are *Apgar's Administrator* v. *Hiler,* 4 *Zab.* 812; *Cortelyou* v. *Hoagland,* 13 *Stew. Eq.* 1, and *Warren* v. *Abbett,* 36 *Vroom* 99. Of these, the only one of controlling authority here is that of Apgar's Administrator *v.* Hiler, which is a decision of this court. That decision does not sustain the broad proposition for which it was cited. This court there held merely that, between two persons who had signed the same promissory note as sureties for another signer, the oral promise of one surety to indemnify the other was valid. This promise was deemed outside of the statute, because, by signing the note, the promisor had himself become a debtor, and so his promise to indemnify was to answer for his own debt. In Cortelyou *v.* Hoagland several stockholders and directors of a corporation had promised to indemnify another stockholder and director for endorsing a corporate note, and Warren *v.* Abbett was of similar character. In the Cortelyou case the Chancellor rested his decision on Apgar's Administrator *v.* Hiler, which, as above stated, was essentially different, and on *Thompson* v. *Coleman,* 1 *South.* *216, which was a promise to indemnify a constable for selling, under

execution, goods claimed by an outside party, a case where the promisee had no redress except on the promise, and therefore clearly outside of the statute. If the decisions in Cortelyou v. Hoagland and Warren v. Abbett are to be supported on prior New Jersey adjudications, such support must be found in the doctrine that, where the consideration of a promise to answer for the debt, default or miscarriage of another is a substantial benefit moving to the promisor, then the statute does not apply. This rule was recognized in *Kutzmeyer* v. *Ennis,* 3 *Dutcher* 371, and *Cowenhoven* v. *Howell,* 7 *Vroom* 323. To support those decisions on this rule it must be held that the payment of a corporate debt is substantially beneficial to the stockholders or directors of the corporation, a proposition which seems to be denied in other tribunals. *Browne Frauds,* § 164.

In the promise now under consideration there was no such element, and no case has been found in our reports involving the present question. We should, therefore, decide the matter on principle, or as nearly so as related adjudications will permit.

Looked at as *res nova,* it seems indisputable that the defendant's promise was within the statute; it was to respond to the plaintiff in case the defendant's son should make default in the obligation which he would come under to the plaintiff as soon as the plaintiff became surety for him, an obligation either to pay the debt for which the plaintiff was to be surety or to reimburse the plaintiff if he paid it. In this statement of the nature of the promise there is, I think, every element which seems necessary to bring a case within the purview of the statute. The parties, in giving and accepting the promise, contemplated (1) an obligation by a third person to the promisee; (2) that this obligation should be the foundation of the promise—*i. e.,* that the obligation of the son to the promisee should attach simultaneously with the suretyship of the plaintiff, and thereupon should arise the obligation of the promisor for the fulfillment of the son's obligation, and (3) that the obligation of the promisor should be collateral to that of the son—*i. e.,* if the latter should perform his obligation,

the promisor would be discharged, while if the promisor was required to perform his obligation, that of the son would not be discharged, but only shifted from the promisee to the promisor.

An examination of the cases will show that not many of them are in conflict with this view, when they are free from differentiating circumstances.

In the leading case of *Thomas* v. *Cook,* 8 *Barn. & C.* 728, such a circumstance appears in the fact that the promisor was himself a signer of the bond against which he promised to indemnify the promisee, and thus the promise was, in a reasonable sense, to answer for that which, as to the promisee, was the promisor's own debt. On this difference may be explained the decisions in *Jones* v. *Letcher,* 13 *B. Mon.* 363; *Horn* v. *Bray,* 51 *Ind.* 555; *Barry* v. *Ransom,* 12 *N. Y.* 462; *Sanders* v. *Gillespie,* 59 *Id.* 250; *Ferrell* v. *Maxwell,* 28 *Ohio St.* 383, and others, resting on the rule applied in *Apgar's Administrator* v. *Hiler,* 4 *Zab.* 812.

The remark of Mr. Justice Bayley, in Thomas *v.* Cook, that a promise to indemnify was not within either the words or the policy of the statute, has caused much of the confusion existing on this subject, but is more than counterbalanced by the observations of Lord Denman, in *Green* v. *Cresswell,* 10 *Ad. & E.* 453, and Chief Baron Pollock, in *Cripps* v. *Hartnoll,* 4 *Best & S.* 414, to the effect that a promise to indemnify may be also an undertaking to answer for the debt or default of another, and that when it is, it comes within the operation of the statute.

Another circumstance taking cases out of the simple class with which we are now concerned is that mentioned in *Kutzmeyer* v. *Ennis,* 3 *Dutcher* 371, 376, viz., the existence of a new consideration beneficial to the promisor, or, as it is sometimes expressed, moving to the promisor. Such cases are *Smith* v. *Sayward,* 5 *Greenl.* 504; *Lucas* v. *Chamberlain,* 8 *B. Mon.* 276; *Mills* v. *Brown,* 11 *Iowa* 314; *Reed* v. *Holcomb,* 31 *Conn.* 360; *Smith* v. *Delaney,* 64 *Id.* 264; *Potter* v. *Brown,* 35 *Mich.* 274; *Comstock* v. *Norton,* 36 *Id.* 277; *Harrison* v.

*Sawtel,* 10 *Johns.* 242; *Sanders* v. *Gillespie,* 59 *N. Y.* 250; *Tighe* v. *Morrison,* 116 *Id.* 263.

Cases of still another character are sometimes cited in support of the statement that contracts to indemnify are outside of the statute, such as *Cripps* v. *Hartnoll,* 4 *Best & S.* 414; *Reader* v. *Kingham,* 13 *C. B.* (*N. S.*) 344; *Anderson* v. *Spence,* 72 *Ind.* 315; *Keesling* v. *Frazier,* 119 *Id.* 185; *Beaman* v. *Russell,* 20 *Vt.* 205. But these judgments rest on the same idea as *Thompson* v. *Coleman,* 1 *South.* *216, that there existed no other liability to the promisee than that of the promisor, and so, manifestly, the statute was not applicable.

On the other hand, there is sufficient judicial authority for the proposition that an undertaking to indemnify a person for becoming surety for another is, in the absence of any modifying fact, a promise within the statute. *Green* v. *Cresswell,* 10 *Ad. & E.* 453; *Simpson* v. *Nance,* 1 *Spears* 4; *Brown* v. *Adams,* 1 *Stew.* 51; *Kelsey* v. *Hibbs,* 13 *Ohio St.* 340; *Clement's Appeal,* 52 *Conn.* 464; *Bissig* v. *Britton,* 59 *Mo.* 204; *Nugent* v. *Wolfe,* 111 *Pa. St.* 471; *Draughan* v. *Bunting,* 9 *Ired.* 10; *Hurt* v. *Ford,* 44 *S. W. Rep.* 228, and *May* v. *Williams,* 61 *Mass.* 125, were decided on this basis. In the case last mentioned, Mr. Justice Porter stated the true rules very clearly and concisely.

No doubt there are opposing cases which cannot be explained on any distinguishing circumstance. Such seem to be *Chapin* v. *Merrill,* 4 *Wend.* 657; *Jones* v. *Bacon,* 40 *N. E. Rep.* 216; *Dunn* v. *West,* 5 *B. Mon.* 376; *Vogel* v. *Melms,* 31 *Wis.* 306, and *Wildes* v. *Dudlow, L. R.,* 19 *Eq. Cas.* 198. But some of these cases merely follow *Thomas* v. *Cook, ubi supra,* without noticing the distinction which later discussion has justified, while others appear to have been induced by the injustice of a refusal to enforce a promise on the strength of which the promisee incurred his liability, rather than by a ready purpose to execute the will of the legislature.

No doubt injustice may result from the enforcement of the statutory rule, but that rule sprang from a conviction that its adoption would prevent more wrong than it would permit, and its enactment in England and, perhaps, every state in

this union indicates the generality of this assurance. Said Mr. Justice Sterrett, in *Nugent* v. *Wolfe, ubi supra:* "The object of the statute is protection against 'fraudulent practices commonly endeavored to be upheld by perjury,' and it should be enforced according to its true intent and meaning, notwithstanding cases of great hardship may result therefrom." With more detail did Chief Justice Shaw, in *Nelson* v. *Boynton, 3 Metc.* 396, say: "The object of the statute manifestly was to secure the highest and most satisfactory species of evidence in a case where a party, without apparent benefit to himself, enters into stipulations of suretyship, and where there would be great temptation, on the part of a creditor, in danger of losing his debt by the insolvency of his debtor, to support a suit against the friends or relatives of the debtor, a father, son or brother, by means of false evidence; by exaggerating words of recommendation, encouragement to forbearance and requests for indulgence, into positive contracts."

Our conclusion is that the promise proved at the trial was insufficient to sustain the action; that the judgment for the plaintiff should be reversed, and that, in accordance with the reservation at the trial, a verdict and judgment should be entered in favor of the defendant.

*For affirmance*—VAN SYCKEL.    1.

*For reversal*—THE CHANCELLOR, DIXON, GARRISON, COLLINS, GARRETSON, HENDRICKSON, BOGERT, ADAMS, VREDENBURGH, VOORHEES, VROOM.    11.