## WILLIAM KELSEY v. ADIN G. HIBBS.

1. A bill of exchange was drawn payable " on the 6—9 January, 1852." Held, that there was no legal objection to the evidence of bankers and merchants showing that the figure 9 was thus placed after the figure 6, to show that the last day of grace would be the 9th of January, 1852.
2. A bill of exchange drawn by S., payable to the order of H., but not indorsed, was handed by the defendant in the action to the plaintiff, who had been previously in the habit of indorsing for each other, with a request by the defendant to the plaintiff to *indorse it for him*, which the plaintiff did, and the bill was subsequently indorsed by H., and negotiated. The name of the defendant was not on the bill. The plaintiff was compelled to pay the amount of the bill to the holders, and brought the action on a contract alleged to arise from the circumstances stated, to recover the amount so paid. The defendant relied on the statute of frauds as a defense. Held, that the circumstances showed no consideration moving between the plaintiff and defendant, sufficient to create a distinct and independent contract, which would not be affected by the statute, and no liability on the part of the defendant or his property, other than that which arose from an implied promise to indemnify, which promise not being in writing, created no legal obligation.

*Easter* v. *White*, 12 Ohio St. Rep. 219, approved and followed.

ERROR to the district court of Franklin county.

The petition of Hibbs, the plaintiff in the action, in the court of common pleas of Franklin county, stated, that some time in the month of November, 1851, the defendant, Kelsey, then having in his possession a certain draft for $900, drawn by A. J. Smith, and dated at Newark, Ohio, November 8, 1851, upon Delano, Dunlevy & Co., of New York, and payable to the order of A. M. Hale, on 6—9 January, next after the date of said draft, called upon the plaintiff, at Columbus, Ohio, with the said draft, and requested him to indorse the same for him, the said defendant, and that the plaintiff did then and there, at the request of said defendant, indorse the said draft for him, and for his accommodation only. That at the time this plaintiff put his name on the back of said draft, as aforesaid, there was no other name written thereon, and the indorsement of this plaintiff was put upon it, to enable the defendant to negotiate the said draft, or to procure it to be discounted. That this plaintiff had no interest of any sort in the said draft or its proceeds, and

never received any benefit therefrom, but signed the same solely at the request, and for the accommodation of the said defendant as his surety. The plaintiff further says, that said draft was, after his said indorsement thereof, negotiated and sold to William Neil & Co., bankers of Columbus, O., at which time he has been informed the name of the said Hale was indorsed thereon, and that before the same matured, the said A. J. Smith and A. M. Hale became hopelessly insolvent, and have remained, and still are utterly insolvent and worthless. That the said draft was not paid at its maturity, but was duly protested for nonpayment, and the said defendant had due notice and full knowledge of the insolvency of said Smith and Hale, and of the nonpayment of said draft. That the said William Neil & Co., after the protest of said draft for nonpayment as aforesaid, brought suit thereon, against the said Smith and Hale and this plaintiff, and the said Smith and Hale not having been found, so as to be served with process, the said William Neil & Co., on the 20th July, 1852, recovered a judgment on said draft, against this plaintiff, for the sum of $982.65, damages, and $4.75, costs of suit, which judgment this plaintiff was compelled to, and did pay to said William Neil & Co. The amount so paid with interest, the plaintiff claimed to recover.

The answer of Kelsey, the defendant in the action, stated that he had no interest whatever in the draft described in the petition. That defendant communicated to the plaintiff the request of Hale, that he, the plaintiff, should indorse said draft, and said and did nothing more. Defendant denies that he ever requested the plaintiff to indorse said draft for him, and that defendant was entirely indifferent whether said plaintiff indorsed said draft or not. Defendant denies that said plaintiff indorsed said draft for him or in any way for his accommodation, or that the indorsement was made to enable the defendant to negotiate the same, or to get it discounted. Defendant had no agency or connection with the negotiation of said draft, and never directly or indirectly received any part of the proceeds thereof. Defendant denies that he received due notice of the nonpayment of said draft. The de-

fendant further saith, that the supposed cause of action of said plaintiff against said defendant, was and is a special promise of this defendant to answer the debt, default and miscarriage of other persons, to-wit : the said A. J. Smith, and the said A. M. Hale, and that no agreement in respect of, or relating to the said supposed cause of action, nor any memorandum or note thereof, was or is in writing, or is signed by this defendant, or by any other person by him thereunto lawfully authorized. The defendant further states, that the plaintiff did not receive due notice of the nonpayment of said draft, and was not liable upon or bound to pay the same, and suffered judgment thereon against him, by his default and neglect.

On the trial of the issues before the jury, the evidence of the plaintiff in the action was in substance—that the defendant requested the plaintiff to indorse said draft for him, the defendant, and that the plaintiff did so indorse the draft. That at about the expiration of the usual mail time from New York, after the maturity of the bill, he received from the Columbus post-office, where he usually received his letters, notice of the protest of the draft for nonpayment—that the usual time then was three days. That on receiving said notice, he took it to the defendant, and that thereupon there was a negotiatien between them upon the subject of renewing the draft—each offering to be the surety for the other on a new draft, and there being a mutual refusal. The plaintiff admitted, that when he brought his suit and when he commenced his testimony, he was mistaken in the date of the draft, and the time when payable, nor could he remember within a week of the time, when he received the notice from New York. The protest of the draft showing a presentment for payment on the 9th January, 1852, was offered and received against an objection by the defendant. To obviate the objection, evidence was offered and received, to show that 6—9 January, meant, as understood among bankers and merchants, that the draft was due on the 6th, and that the 9th was the last day of grace. To this evidence there was an

exception. No evidence was offered of any note, or memorandum in writing, signed by the defendant.

The counsel for the defendant asked the court to instruct the jury: That upon the bill described in the pleadings in this case, as payable on the 6—9 January, 1852, the usual days of grace are allowable by law, after the said 9th January, 1852; and if demand of payment of said bill was made on said 9th of January, 1852, and notice of nonpayment thereof was given on said 9th day, or the day thereafter, such demand and notice was premature, and the defendant is entitled by law to a verdict in his favor, which instruction the court refused to give, and the defendant thereupon excepted to said refusal.

And the defendant further asked the court to instruct the jury, as follows: That taking all the testimony in the case together, there is not sufficient proof that notice of the nonpayment of the bill in the pleadings mentioned was given, in proper form to the said plaintiff, as indorser thereof, which instruction the court refused to give, and the defendant thereupon excepted to said refusal.

The defendant's counsel thereupon asked the court to give the jury the following instructions, numbered respectively, 1, 2 and 3, to-wit: (1.) That if the defendant, Kelsey, did request the plaintiff, Hibbs, to indorse the bill in question for him, still, if Kelsey had no interest in the bill in question, and signed no writing relating to the subject, the case is within the statute of frauds and perjuries, and Kelsey, by reason of that statute, is not liable in this action. (2.) That if one person requests another (such request not being in writing), to indorse a bill, solely for the benefit of a third person, and the person requested do so indorse, and be compelled to pay the bill, such payment creates no liability on the part of the person making such request. (3.) If the person making such request went further, and promised to indemnify the indorser against such loss, this promise, unless in writing, would not create any liability on the part of such promisor to the indorser, if the promisor were in nowise interested in such bill, or its proceeds. The court thereupon

refused to give the instruction numbered 1, but gave the in structions numbered 2 and 3. To which refusal of the court to give the instruction numbered 1, the defendant excepted.

There was a verdict for the plaintiff, a motion for a new trial, for errors in admitting evidence and refusing instructions, and an exception. A judgment having been rendered on the verdict, a petition in error to reverse it was filed in this court.

*P. B. Wilcox*, for plaintiff in error:

1. The petition below is bad, in substance, for not averring due notice of nonpayment *to Hibbs*.

There is no averment at all that notice was given to *Hibbs*. Notice to *Kelsey* was nothing, and could avail nothing; *Hibbs* was the party to whom the notice should have been given, and without that notice *Hibbs* was in no way responsible to Neil & Co. The recovery of a judgment by Neil & Co. against Hibbs is not, *per se*, evidence of notice, and can, in no way, affect Kelsey, who was neither a party to the bill, nor to the suit; and had no notice of the suit. The omission of the averment of the notice of nonpayment is fatal, even after verdict. 1 Chit. Pl. 328; Doug. 679; East. 231.

2. No sufficient evidence of such notice was given. 1 Ohio St. Rep. 206; see also the authorities cited in Edward's Prom. Notes, 617; also 1 Smedes & Marshall, 261; 2 Ohio St. Rep. 345; 28 Vermont, 316; 1 Gill, 127; 20 Johns. 371, 321. And it is incumbent upon the holder, to show *affirmatively* that the notice was given in due time. 18 Conn. 373; 3 Comst. 272. See also *Lawson* v. *Sherwood*, 1 Stark. 314, cited in Byles on Bills, p. 163; 4 Leigh, 55; 22 Maine, 125.

The rule is well settled that where an indorser pays a bill after having been discharged by the laches of the holder, he can not recover against a prior indorser. *Martin* v. *Morgan*, 3 Moore, 635; 12 East. 434; Edward's Prom. Notes, 547, note 2.

Whether the payment be made *before* or *after* judgment, can not vary the rights of the parties. A surety can not recover, unless he was bound for payment, for if he pay a

debt which he was not legally compelled to do, he can not recover. Note to White's Equity Cases, Law Library, 16 Mass. 40 ; 6 Ala. 780, 782 ; 14 Ala. 404 ; 8 Vermont, 212 ; 1 Ohio St. Rep. 327.

It is submitted, therefore, that the court erred in not charging the jury, that there was not sufficient proof of notice of nonpayment.

3. The court erred in their charge in respect to the statute of frauds.

There was no *express* contract between Hibbs and Kelsey. The contract which *the law would imply*, from the circumstances, would amount to no more, at the utmost, than an agreement by Kelsey to save Hibbs harmless, on account of the indorsement. That such a case is within the statute of frauds, seems to be settled in 4 Denio, 559, and cases there cited. See also 4 Barb. S. C. Rep. 131, overruling 4 Wend. 557, and commenting on 12 Mass. 297 ; see also 4 Selden, 207 ; 9 Iredell, 10 ; 37 Eng. C. L. 142 ; 6 Cowen, 346 ; 4 Strob. 431 ; 6 Ind. 78. The case of *Easter* v. *White*, 12 Ohio St. Rep. 219, 230, is directly in point.

4. The court erred also in their construction of the bill, in respect to the time it fell due, and in admitting parol evidence to explain it. The language of the bill is " on 6—9 January next, pay," etc. Now, we say there are to be three days of grace after the 9th, and that such is the fair construction on the face of the paper. The paper shows that something is to be done on the 6th or 9th of January. What is it? The paper says *pay;* and that's all. It says to the drawee of the bill, do you, on the 6—9 of January, *pay;* and if not *paid* on the 6—9, then the law steps in and gives three days of grace. Payment, therefore, should have been demanded on the 12th and not on the 9th.

*A. G. Thurman*, also, for plaintiff in error :

1. The petition states no cause of action.

Hibbs was a mere accommodation indorser of the draft. To fix his liability, due presentment of the draft for accept-

ance or payment, a refusal to accept or pay, and due notice to him, were indispensable.

If he paid the draft without his liability being so fixed, such payment was voluntary, and in his own wrong; and no cause of action thereby accrued to him.

Now, it is nowhere averred in the petition that the draft was presented for acceptance or for payment, or that any notice of nonacceptance or nonpayment was given to Hibbs.

2. Nor did the proof show that the liability of Hibbs had been thus fixed.

3. The court was asked to instruct the jury, that if Kelsey had no interest in the draft, the case was within the statute of frauds.

The court refused to give the instruction, and the refusal is assigned for error.

On the motion for a new trial, the same point was made and overruled, and this is assigned for error.

*Prima facie*, Kelsey had no interest in the bill. It was payable to Hale, and Hale had not indorsed it when Kelsey procured Hibbs' indorsement. Kelsey, by answer, denied all interest in it, or in its proceeds; and there was no proof that he had any. If an inference may be drawn from his asking Hibbs to indorse that he had an interest, the facts before stated afford a contrary inference. The question, then, to say the most for Hibbs, was fairly debatable on the testimony. There was testimony tending to prove that he had an interest (if Hibbs' testimony has that tendency, which is not at all clear), and there was testimony and facts in the case that tended to show that he had no interest. A sufficient foundation, then, was laid for the instruction prayed for; and if that instruction was sound in law, the judgment must be reversed because it was refused.

I should have premised that Kelsey has never made any written request or promise, or evidence of either. The transaction rests wholly in parol.

Now, suppose the case were this: That Kelsey, as the friend or agent of Hale, the holder of the bill (he, Kelsey having no interest in it), had requested Hibbs to indorse it

for Hale; that Hibbs had replied, "I am afraid to trust to the responsibility of Hale or of the drawers, but if you (Kelsey) will undertake to save me harmless, I will indorse it;" and that Kelsey had answered, "I will save you harmless." In such a case, no one would deny that the case would be within the statute. It would plainly be a promise to answer for the default of the parties to the bill, other than Hibbs; and, therefore, to be valid, would have to be in writing, or evidenced in that way.

Let us see wherein the present case differs from that above supposed. In both (bearing in mind the hypothesis of the instruction prayed for), Kelsey had no interest whatever in the bill. In both, Hale, the payee, and who had not indorsed the bill, was the apparent owner thereof. In neither did Kelsey profess to have any interest in the bill. In the case above supposed, he expressly promised to indemnify Hibbs. In the actual case, he made no promise whatever.

It results that, in order to hold that the case is not within the statute, two propositions must be maintained—one of law, and the other of law and fact—to-wit:

1st. That if Kelsey had an interest in the bill, the statute does not apply.

2d. That, upon the facts of the transaction, Kelsey is estopped to deny that he had an interest.

I do not admit the first of these propositions to be law. But it is unnecessary to gainsay it. For the instruction prayed for and refused, went upon the ground that the jury should find that he had no interest. It was conditional, that if the jury should find that he had no interest, then the case was within the statute.

Nevertheless, the court must sustain both propositions, to take the case out of the statute. For, obviously, it is immaterial to inquire whether Kelsey is estopped to deny that he had an interest, if the fact of such interest would not make him liable.

But, if it be assumed that the first proposition is sound law, where is there anything in the circumstances of the case to create the estoppel in question. Estoppels *in pais* (and if

there is any estoppel here, it is *in pais*) rest upon the ground of fraud—generally, if not universally, upon misrepresentation. But there was not a particle of testimony to show Kelsey guilty of any fraud or misrepresentation. The only thing that can be said, is, that he asked Hibbs to indorse the bill for him (Kelsey). But this was not a representation. What fact is asserted by such a request ? It may seem singular for a person to request an indorsement for himself of a paper in which he has no interest : but many such cases may be supposed without the least singularity in them. Kelsey neither asserted any interest in the bill, nor was he guilty of any concealment, nor did he promise to save Hibbs harmless. But who ever heard of an estoppel *in pais*, where there was neither representation nor concealment ? I have never met with such a case, and I do n't believe that one can be found.

The bill was handed to Hibbs. He had full opportunity to read and inspect it. He could not fail to discover that, upon its face, it belonged to Hale. He could not fail to see that Hale had not indorsed it, and that, therefore, he was apparently the owner of it. Not a word to the contrary was said to him. Kelsey asserted no ownership of, or interest in, the bill—made no representation, was guilty of no concealment or fraud.

Again : To create an estoppel *in pais*, there must not only be false representation, or concealment, but there must also be reliance, by the party setting up the estoppel, upon the truth of the representation, or he must have been deceived by the concealment.

It can not be pretended that there was any concealment in this case. But it will be argued, perhaps, that Kelsey's request was an *implied* assertion of interest. I have already answered that.

But, were it so, did Hibbs rely upon any such implied assertion ? I say, no. If he had supposed that Kelsey had an interest in the bill, would he not have required Kelsey to indorse it, and then indorsed it after him ? Can he, after having the bill before him ; seeing that legally, at least, it belonged to Hale ; and without any assertion that any other

person had an interest in it; and without making any inquiry as to ownership or interest—be permitted to claim an estoppel on the ground of a blind reliance upon an inference drawn from Kelsey's request? Can he be permitted to say: I did not use my eyes or my tongue, I did not know, nor did I ask, whether Kelsey was interested in the bill, but I inferred that he was, and I blindly relied on that inference?

Does any such case present an estoppel?

3d. The statute of frauds can not be avoided by an estoppel *in pais*.

*R. B. Warden* and *C. N. Olds*, for defendant in error:

There is nothing in the argument that the court erred in sustaining the plaintiff's petition in the court below, or in not instructing the jury that the case was within the contemplation of the statute of frauds.

When Hibbs indorsed the bill, at the request of Kelsey, he considered it Kelsey's paper; and he had the right to so consider it; and Kelsey has no right to prove or to insist that Hibbs was in error. Kelsey is estopped, by his behavior when Hibbs was induced by him to sign the paper, from insisting that he was no party to the paper, and did not intend to become a party to it. Kelsey requested Hibbs to indorse the paper for him, and he did indorse it for him. The case of *Easter* v. *White*, 12 Ohio St. Rep. 219, is not against this view of the subject.

As to notice, the averments of the petition are sufficient, and the proof shows the notice to have been given in time.

It was competent for the plaintiff to show by testimony that the 6—9 January meant, as understood among bankers and merchants, that the last day of grace on the bill was the 9th of January, and the court below was right in admitting such testimony. The cases are sufficiently collected in 2 Phil. Ev. 726, 729, Cowen & Hill and Edward's notes.

But it was not necessary to offer the testimony of experts at all. This court will, on inspection of the bill as the record shows it, hold that the true construction of the figures in the bill was that given by the witnesses.

A judge may obtain information from experts, if he de-sires it, on matters which he does not clearly comprehend, but he ": can not be compelled to receive their opinions as matter of evidence." Per Grier, J., in *Winans* v. *N. Y. & E. R. R. Co.*, 21 How. 100, 101.

In answer to the argument that if the day of payment was the 6th, as we claim, the proof of notice is insufficient, it is enough to say that the evidence shows that whatever the notice was it was known to Kelsey, who was, as the jury has found, responsible to Hibbs, and it was known to Hibbs, who was liable on the bill. Both of these parties, interested on the subject of notice, evidently regarded it, at the time, as sufficient. And the authorities are to the effect that any promise or any other implied recognition by an interested party such as Kelsey, of the sufficiency of notice will bind him, or may bind him, as affording sufficient evidence that notice was duly given in point of time. See Byles on Bills, 238; *Myres* v. *Standart*, 11 Ohio St. Rep. 29; *Booth* v. *Jacobs*, 3 Nev. & Man. 351. At the time notice was given, if Kelsey had not regarded it sufficient, he would have denied his liability upon that ground instead of the false ground which he did take.

Are we not at liberty to argue, here, precisely as we argue as to Kelsey's action in procuring the signature of Hibbs? May we not say that Kelsey, having permitted Hibbs to pay the bill, instead of objecting to the notice, is estopped from objecting now that the notice was insufficient to charge Hibbs?

GHOLSON, J.—The draft which gave rise to the controversy in this case, was payable " on the 6—9 January, 1852." The only doubt we feel is whether any evidence was necessary to enable the court to determine what was the intention of the parties in inserting the figures 6—9 in the body of the draft. To their explanation by the testimony of bankers and merchants, we see no objection, and do not think the court erred in refusing to instruct the jury, that the draft matured on the 12th of January, 1852, but on the contrary we think that

the last day of grace expired on the 9th day of January, 1852, and that to show this the figures were used.

As to the sufficiency of the proof to show that the plaintiff in the action received due notice of the nonpayment of the draft, in the view we take of the plaintiff's claim, and of the issue in the pleadings, that question can not be made by the defendant. The damage sustained by the plaintiff for the breach of the obligation of the defendant, is shown, *prima facie*, by the judgment and its payment. If, as alleged in the answer of the defendant, the damage of the plaintiff proceeded from his failure to make defense, when defense might have been successfully made, such proof should have come from the defendant.

This brings us to the consideration of the important question, what was the nature of the plaintiff's claim, as shown by the pleadings and evidence? Or, in other words, how does it appear that an obligation rested on the defendant to make good to the plaintiff the damage and loss he sustained by indorsing the draft? And it should be observed before entering upon the inquiry, that both in the pleadings and in the evidence, the case of the plaintiff proceeds on the ground of an obligation by *contract*, express or implied. Upon no fair interpretation can it be regarded as a case of fraud or deceit. It is not claimed that the plaintiff indorsed the draft as surety for one man under a belief, which the defendant induced, by trick, device or false representation, that he was becoming surety for another.

The plaintiff, in fact, entered into a contract, as the indorser or surety of the antecedent parties on a bill of exchange. He does not deny but affirms the validity of that contract. Neither in point of fact nor of law, as shown by the pleadings or evidence, was the defendant bound by that contract. His name is not on the bill. It is not claimed that he was liable to the holder of the bill, in any manner, for its payment; nor could such a claim be made, unless on the ground of some contract between the plaintiff and defendant, to the benefit of which the holder might have been subrogated. It is equally clear, that any contract between the plaintiff

and the defendant, which the pleadings state or the evidence tends to show, had reference to that bill of exchange, and the liability upon it of the plaintiff. That contract could only relate to the creation of liability or to its consequences. The defendant might have contracted to do something which would affect the nature and character of the liability about to be created, or as to the consequences of a liability known and ascertained at the time. Now, the only contract, affecting the creation of the liability, which could be imagined as resulting from what passed between the parties, as disclosed by any· thing in the pleadings or evidence, would be a contract on the part of the defendant to put his name on the bill as a prior indorser. What would be the effect of such a contract we need not decide, for the pleadings were not framed, nor was the evidence offered with a view to any such contract. We are thus brought to the conclusion that the contract stated in the pleadings, and the one which the evidence tended to prove, could only have related to the consequences of the liability on the bill assumed by the plaintiff. And it is difficult to see how it could be other than a contract of indemnity.

It has often been a subject of discussion, whether a verbal promise, in which the debt, default or miscarriage of a third person is involved, be within the statute of frauds and void, or be an independent contract and valid; and the cases on the subject present considerable conflict. Certain principles bearing on the inquiry are conceded in the authorities. And, first, the sufficiency of the consideration does not take the case out of the statute. There was no occasion for a statute to make void a naked promise, unsupported by a considera tion, although such promise should be in writing. And, next, there is no distinction, whether the debt or obligation of the third person be one created at the time of the making the promise, or one which previously existed.

When the promise involves the debt or default of a third person, the consideration of the promise may be important in deciding whether it can be regarded as creating an inde-pendent contract. When the debt or obligation of a third

person is created, and the promisee at the time, upon the request of the promisor, becomes liable therefor, there is a consideration of damage to the promisee. It has been supposed that this would come within the third class of cases stated by Kent, C.J., in *Leonard* v. *Vredenburg*, as arising under the statute, and which he says would not be embraced. That class is thus stated: "When the promise to pay the debt of another arises out of some new and original consideration of benefit or harm moving between the newly con tracting parties." 8 Johns. 29–39. The general manner in which this class of cases is described has, as stated in a recent case in New York, given rise to some misapprehension, and has probably misled in the decision of subsequent cases. *Mallory* v. *Gillett*, 21 N. Y. 412–418. It is perhaps sufficiently qualified by a previous statement, that "if a promise to pay the debt of another be founded on a new and distinct consideration, independent of the debt, and one moving between the parties to the new promise, it is not a case within the statute." 8 Johns. 39.

The authority cited by Kent, C.J., for his conclusion that the third of the classes of cases stated by him is not within the statute, is 1 Saund. 211, note 2. The part of the note referred to is as follows: "But where the promise is founded upon some *new* consideration, sufficient in law to support it, and is not merely for the debt, etc., of another, such an undertaking, though in effect it be to answer for another person, is considered as an original promise, and not within the statute." Citing *Read* v. *Nash*, 1 Wils. 305; 5 Mod. 205; *Stephens* v. *Squire*, 3 Burr. 1886; *Williams* v. *Leper*, 1 B. & A. 297. The same expression, *new and original consideration*, the use of which by Kent, C.J., has led to misapprehension, is found substantially in the note from Saunders. The expression *new consideration* is, in the note, qualified by " not merely for the debt, etc., of another." In a subsequent edition of Saunders' Reports, published in England, after the decision in *Leonard* v. *Vredenburg*, the indefiniteness in the note is corrected. In a note, in that edition, it is said: " Whether each particular case comes within this clause of

4

the statute or not, depends not on the consideration for the promise, but on the fact of the original party remaining liable, coupled with the absence of any liability on the part of the defendant or his property, except such as arises from his express promise." This rule was, in the case of *Butcher* v. *Steuart,* 11 Mees. & Welsb. 857, 870, cited by one counsel, and admitted by the other to be correct; and in the case of *Green* v. *Cresswell,* 10 Ad. & El. 453, 459, the rule was referred to by counsel, and Lord Denham said: "There does not appear any objection to the test laid down in the note to 1 Williams' Saunders, 211 c.; and it is decisive in favor of the objection. The original party remained liable; and the defendant incurred no liability except from his promise."

It will be observed that the test thus referred to, and which has been quoted above, in terms, rather refers to a debt or obligation created before the promise; but, as has been stated, this makes no difference. The case of *Green* v. *Cresswell,* in which the test was held to be applicable, was one where the obligation was created at the time of the promise. It was a promise to indemnify the plaintiff, if he would become bail for a third person. He became bail, sought to make the promisor liable, but failed, because he could not show that the defendant had incurred any liability, except from his promise. To create such liability on the part of the defendant or his property, there must certainly, in the language of Kent, C. J., be " a new and distinct consideration, independent of the debt, and one moving between the parties to the new promise." It is said, in the case of *Mallory* v. *Gillett,* above cited, in which the classification of Kent is elaborately explained and defended, and in a summing up of the exceptions to the statute, that the consideration " may come from the debtor, as where he puts a fund in the hands of the promisor, either by absolute transfer, or upon a trust to pay the debt, or it may be in his hands charged with the debt as a prior lien, as in the case of *Williams* v. *Leper,* and many others. So the consideration may originate in a new and independent dealing between the promisor and the creditor, the undertaking to answer for the debt of another being one

of the incidents of that dealing." 21 N. Y. 433. In the case of *Nelson* v. *Boynton*, 3 Matc. 396–402, it is said : " The rule to be derived from the decisions seems to be this, that cases are not considered as coming within the statute, when the party promising has for his object a benefit which he did not before enjoy, accruing immediately to himself; but where the object of the promise is to obtain the release of the person or property of the debtor, or other forbearance or benefit to him, it is within the statute." And in the case of *Durham* v. *Aeledge*, 1 Strob. 5, 7, it is said that the conflicting cases may be reconciled by the rule which Leigh, in his *Nisi Prius*, 1031, has deduced from some of the English decisions, that if the promise be founded on a new and distinct considera-tion, co-extensive therewith, and moving not to the third party, but to the party making the promise, it is not within the statute.

In this case, the only consideration which is disclosed, is the damage to the plaintiff from a liability incurred upon the request of the defendant. If there be any other—if from what passed between the parties, the plaintiff could have in-ferred, that there was any other, he has not been able to state it in his pleadings, or exhibit it in his proof. It could not, therefore, have been a distinct consideration, independent of the debt, *moving between the parties*. If there was " any lia-bility on the part of the defendant or his property," arising from any arrangement between him and the debtor, it is not disclosed, so that its extent and sufficiency, as a considera-tion, might be determined. We certainly can not conclusively infer from a mere request to " indorse for me " a bill drawn by a third person, that the party making the request had re-ceived a distinct consideration creating a liability upon him or his property. We should have to make the double infer-ence, that there was a consideration, and that, in its charac-ter and extent, it was sufficient to prevent the application of the statute. In short, tested by any of the rules shown by the authorities which have been cited, the case of the plain-tiff shows only a promise to indemnify against the default of a third person.

Such being the case of the plaintiff, and there being no note or memorandum in writing, the decision in the case of *Easter* v. *White*, 12 Ohio St. Rep. 219, decisively shows that the statute of frauds applies, and that there is no legal obligation on the defendant. And we think the court erred in not so charging the jury, on the request of the defendant. The judgment of the district court must, therefore, be reversed.

Judgment reversed.

SUTLIFF, C. J., and PECK, BRINKERHOFF and SCOTT, JJ, concurred.