# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## WOLVERTON V. DAVIS.

### May 24th, 1888.

### Absent, *Lewis*, P., and *Richardson*, J.

1. PAROL CONTRACTS—*Default of another—Sureties.*—Under § 1, ch. 140, Code 1873, "a promise to answer for a debt, default, or misdoings of another," must be in writing in order to be enforceable by action.

2. IDEM—*Official bond—Defaults—Case at bar.*—A sheriff executed 'his official bond with two sureties, the former of whom was induced to become such surety by the parol promise of the latter that he would indemnify him against any loss resulting from his suretyship. The promisee had to pay a sum of money by reason of the suretyship. Thereupon he sued the promisor to recover said sum. The latter, in his defence, set up the first section of the statute of parol contracts;
HELD:

> No action lies on said parol promise, and promisee can recover of his promisor only his aliquot part, as co-surety, of the loss by default of their principal.

Error to judgment of circuit court of Prince William county, rendered May 12th, 1884, in an action of trespass on the case in *assumpsit*, wherein Samuel Wolverton was plaintiff and William W. Davis was defendant. Thomas K. Davis was elected sheriff of said county in 1858, and executed his official bond with William W. Davis and Samuel Wolverton and others as his sureties. Thomas K. Davis had orally agreed with W. W. Davis that he should be deputy, and that the profits should be equally divided between them, and that each should furnish sureties. W. W. Davis had requested Wolverton to execute the bond as a surety, and promised orally to indemnify him

against any loss arising from the suretyship. By reason of the default of the sheriff, Wolverton had to pay a sum of money as such surety. He sued W. W. Davis on the parol promise of indemnity to recover that sum. At the trial he offered evidence of said parol promise. The defendant, among other pleas, had pleaded the statute of parol contracts. The jury rendered a verdict for the plaintiff's entire demand. The court excluded the evidence and set aside the verdict, but, the plaintiff being willing to take a verdict for a part, there was judgment entered for that part. The plaintiff, who had duly excepted to the ruling of the court excluding the said evidence, had the court to certify all the evidence in the cause, and brought the case to this court on writ of error.

*Hunton & Son,* for the plaintiff in error.

Two questions are involved in this appeal.

First—Does the evidence offered and excluded establish the relation of principal and surety between W. W. Davis and Samuel Wolverton?

Second—Is the agreement of W. W. Davis with Samuel Wolverton to indemnify, sought to be established by the excluded evidence, within the statute of frauds? and must it therefore be established by written testimony?

Chitty on Contracts, page 894, Note N, lays down the doctrine clearly and fully as follows: "If two persons sign the same obligation as sureties for a third, one at request of principal and the other at request of first surety; they are not co-sureties as between themselves, but the first surety stands as in the relation of principal to the second; is responsible to him for whatever he may be compelled to pay; and has in no event any claim against him for contribution."

The same doctrine is laid down in a treatise on the law of principal and surety by Wm. Theobold of the Inner Temple, and is found in Vol. 1, Law Library, page 159. He says : " If one be-

come surety at the request of his co-surety, he is not in general liable to the latter for contribution, and consequently it would seem that in case the creditor obliges him to pay, he is entitled to complete indemnity from the latter."

Bayliss on Sureties and Guarantors, at page 314, says: "A surety who has entered into the contract of suretyship at the request of a co surety and on his promise of indemnity, may recover from his promisor all he has been compelled to pay by reason of his entering into the contract. * * * There need be no express promise to indemnify to give the surety this right of action, as the law implies a promise of indemnity to a surety who has signed the principal obligation at request of his co-surety."

In Brandt on Suretyship and Guaranty, § 229, this doctrine is laid down as follows: " If one surety, in order to induce another to become bound as surety, agrees to indemnify him from all loss which he may suffer in consequence thereof, such an agreement is valid and will be enforced. The weight of authority is also, if one surety becomes bound at and solely because of the request of another surety, even though there be no express agreement on the part of the latter to indemnify the former, yet the surety making the request, if he is compelled to pay the debt, cannot recover contribution from the surety who signed in consequences of such request." Adjudicated cases are all to the same effect.

*Ragland* v. *Milain's Adm'r,* 10th Ala. 618. In this case Wm. King came to Ragland and asked him to go his security. Ragland refused. King asked him if he would go surety for Milain, and Ragland said he would. King thereupon brought a note signed by Milain and King ; Ragland then signed it, understand ing the money to be raised on the note was for King. Held that Milain was chargeable to Ragland for whole sum as principal on the proof.

*Letcher* v. *Jones,* 13 B. Monroe, 363. This was a suit to recover from a co-surety who had promised to indemnify. But these and other cases to be cited come more properly under the second point.

If the testimony, offered and excluded, established the relations of principal and surety between W. W. Davis and Samuel Wolverton, must the evidence, to establish this relation, be in writing? If we start with the *concessum* that this relation was established, then the same doctrine applies to them as if it had been the bond of W. W. Davis and principal obligor and Samuel Wolverton as his only surety. In such a case it will not be claimed that the contract between these parties should be in writing, or that it is within the statute of frauds.

In such a case it will be conceded that Wolverton had the right to bring this action, and to recover the full amount paid, and prove his case by oral testimony. No authority need be cited for this proposition.

But cases exactly like this have been frequently before the courts of this country and England, and it is maintained that no case can be found where the case established by the excluded testimony was decided to be within the statute of frauds—the fourth section of which provides: "No action shall be brought to charge any person upon a promise to answer for the debt, default or miscarriage of another, unless the promise or some memorandum or note thereof be in writing and signed by the party to be charged thereby or his agent."

It will be borne in mind that the excluded evidence showed that, prior to the execution of the sheriff's bond of Thomas K. Davis, to which W. W. Davis, Samuel Wolverton and others became sureties, the said Thomas K. Davis and W. W. Davis agreed orally that W. W. Davis was to be the deputy of Thomas K. Davis and should divide the profits equally, and that each should furnish sureties in said official bond. That in pursuance of said agreement the said W. W. Davis requested Samuel Wolverton to become surety in said bond, and promised orally that if he would become one of the sureties in said bond he, W. W. Davis, would indemnify him against all loss arising therefrom. The New York cases without exception established the doctrine that such a promise is binding, and not within the statute of frauds.

In *Barry* v. *Ransom*, 12 New York Reports, 2 Kernan, 462, the facts were as follows: John Leydon gave bond as tax collector of Sixth ward of city of New York, with Felix O'Neil, J. M. McGloin and five others as sureties. Leydon became a defaulter for $4,228.95. O'Neil died, Barry, one of the creditors, filed a creditor's bill against Ransom, adm'r of O'Neil, and the heirs of O'Neil. Corporation of New York was paid its debt against Leydon and all his sureties were insolvent except McGloin. It was proved that McGloin became surety for Leydon at request of O'Neil, on promise of indemnity. This promise was by parol, and made when bond of Leydon was executed. The court below decided the estate of O'Neil should bear the whole liability arising out of the bond. The court of appeals affirmed the judgment.

All the New York cases, where the parties both united as sureties in the same bond, are decided the same way. *Chepin* v. *Merrill*, 4 Wend. 667 ; *Kingsley* v. *Balcome*, 4 Barb. 131.

The same doctrine is held in *Beck* v. *Thompson*, 15 Ver. 637 ; *Holmes* v. *Knight*, 10 N. H. 175 ; *Jones* v. *Shortwell*, Kelley, 294 ; *Dean* v. *Newcomb*, 10 Mo. 69 ; *Jones* v. *Letcher*, 13 B. Monroe, 363 ; *Chapin* v. *Lapham*, 20 Pick. 467 ; *Ferrell* v. *Maxwell*, 28 Ohio State, 383 ; *Horn* v. *Bray*, 51 Ind. 555. The same doctrine has been established in Pennsylvania, Maine, Maryland, Georgia, New Jersey, and perhaps in other States.

It is believed that no case can be found where both parties signed as sureties, and one at request of the other, in which it was held that it was necessary to prove in writing a promise of the other to indemnify in order to recover.

In Massachusetts the courts have decided that the promise to indemnify is binding and not within the statute of frauds, although the defendant was *not* co-surety on the bond. *Aldrich* v. *Ames*, 9th Gray, 76. The opinion of the court in this case was pronounced in 1857 by Chief Justice Shaw in one of the finest opinions ever given by that distinguished jurist. It is very difficult to resist his reasoning, and it may be regretted the law

was not settled that way. See also *Perleys* v. *Spring*, 12 Mass. 297. But it is conceded the law is established by the great weight of authority that unless the party making the promise also signed the bond as co-surety, the promise is within the statute. That where both promisor and promisee signed the bond as co sureties, the promise to indemnify is not within the statute.

The doctrine is well and clearly stated in Bayliss on Sureties and Guarantors, page 71. " It is said to be well settled law that if a person signs an obligation as surety on a promise of indemnity by one not bound by the same instrument, the promise is within the statute as being a promise to answer for the default of the principal upon his implied liability to his surety."

" That it is equally well settled that if *a surety on an obligation*, upon his promise of indemnity, procures another to go surety with him *on the same instrument*, the promise is not within the statute, for the indemnity promised is to secure his own default."

*Thomas* v. *Cook*, 8 Barn. and Cress. 728, was a case in which both plaintiff and defendant executed a bond to indemnify one Morris against certain co-partnership debts which the former partners of Morris had agreed to pay, and to provide indemnity against the plaintiff signed this bond at request of defendant and on his promise to indemnify him. The court of Kings Bench, Baily and Park, justices giving opinions, held that it was not a promise to answer for the debt, default or miscarriage of another person, and plaintiff had judgment. One of the judges says " I am of opinion that when a person is about to become bound by writing to answer for the default of a third party, and he procures another party to become bound with him in the same obligation, by promising to indemnify him, that this is an original promise and not within this branch of the statute.

*Green* v. *Creswell*, 37 E. C. L. Reports, 142, is relied on as overruling *Thomas* v. *Cook*. But in this case the facts were different. The defendant was *not a co-surety with plaintiff*, Green became bound as bail for Hadley at the request of Creswell, but

Creswell did not go on Hadley's bail bond. The two cases are not similar in their facts, and it is submitted that both are good law and both in harmony with all the American cases except those in Massachusetts. Lord Denman, in Green and Creswell, does say "that Bailey and Park, in *Thomas* v. *Cook*, said a promise to indemnify does not fall within the words of policy of the statute, and the reasoning in this case does not appear satisfactory in support of the doctrine there laid down, which, taken in its full extent, would repeal the statute." The doctrine in *Thomas* v. *Cook* is true when applied to the facts in that case, but cannot be extended and applied to the facts in *Green* v. *Creswell*. Lord Denman only meant to condemn the doctrine of *Thomas* v. *Cook* if applied to facts in *Green* v. *Creswell*. Indeed, if carried further than this, it would be a mere dictum and cannot be relied on to overturn a decision supported by so many authorities.

The general doctrine here contended for is sustained by the supreme court. *Townsley* v. *Sumrall*, 2 Peters, 180 ; *D' Wolf* v. *Raband*, 1 Peters, 476.

The confusion which has grown up in regard to these cases is due to the different facts involved. By taking all the cases in which both plaintiff and defendant united as co-sureties, and the latter promised to indemnify the former, they will be found, without exception, to establish the doctrine that the promise to indemnify is not within the statute.

But where they did not unite as co-sureties, the cases (except in Massachusetts) establish, with like unanimity, that the promise of indemnity is within the statute.

Hare & Wallace, in their notes to Smith's Leading Cases, 7th edition, on page —, thus dispose of this apparent diversity of opinion or decision on the question involved.

"Amidst this diversity of decision, it may be difficult to discover the true principle, but the result of the authorities as a whole seems to be as follows: A promise by a stranger to the debt to indemnify a surety is *prima facie* within the statute,

because the principal is bound by an implied obligation to do that which the promisor agrees to do expressly, and the promise is, therefore, really to answer for the default of the principal. When, however, the promisor is directly or indirectly answerable for the debt, independently of the promise, any engagement which he may make that it shall be paid, or that the surety shall not be compelled to pay it, will be regarded as contracted on his own behalf, and not for the debt or default of another, in the sense in which the term is used in the statute."

The law was so held in *Harrison* v. *Sawtel*, 10 Johnson, 242, and a recovery allowed on an oral agreement to save the plaintiff harmless for agreeing to indemnify a third person for going surety for the defendant.

In like manner, when a debtor places property in the hands of an agent to enable him to find bail, a promise by the agent to indemnify the bail will be simply a fulfillment of the obligation he has incurred to the principal. *Perly* v. *Spring*, 12 Mass. 297.

The case of *Green* v. *Cresswell*, where the defendant was a stranger to the debt, may be reconciled with that of *Thomas* v. *Cook*, when he was a co-surety with the plaintiff by aid of this distinction, which will be found to explain and harmonize many instances where the courts have apparently differed. For, although persons who enter into a joint obligation stand *prima facie* on equal ground, parol evidence is, notwithstanding, admissible as between themselves to show that one is primarily bound under an express or implied obligation to indemnify the other. *Carpenter* v. *King*, 9 Mett. 511; 2 American Leading Cases, 445, 5th edition.

In *Thomas* v. *Cook* the instrument out of which the liability arose had been executed by the plaintiff and defendant, so that the only effect of the promise of indemnity was to exclude the implication that both were to share the burden and throw the whole on to the defendant.

In *Green* v. *Cresswell*, on the contrary, the plaintiff's case

rested wholly on the alleged promise, and the effect of allowing him to recover would have been to charge the defendant with the debt of another, on oral testimony, without proof that it was also his own.

If it is established that the plaintiff and defendant in this case occupied the relation of principal and surety, then, on general principles, Wolverton had the right to full recovery against Davis, just as any one going security for another has a right to recover the full amount paid as such surety on parol proof of suretyship and damage. The statute of frauds never had anything to do with such a case. The law implies a promise. If adjudicated cases are looked to it will be found they all concur in holding the oral promise of W. W. Davis to Wolverton to be unaffected by the statute of frauds.

*William H. Payne,* for the defendant in error.

HINTON, J., delivered the opinion of the court.

The question to which the arguments of counsel on both sides of this case were chiefly directed, and upon the solution of which our decision must depend, is whether a promise by one to indemnify another, who has become co-surety with him in an official bond, at the promisor's request, falls within that provision of our statute of frauds which requires that "a promise to answer for a debt, default or misdoings of another" must be in writing, to be enforceable by action. Code Va., 1873, ch. 140, § 1. The question arises in this way: In 1858 one Thomas K. Davis, being elected sheriff of Prince William county, executed, as he was required by law to do, a bond to the Commonwealth of Virginia, in the penalty of $70,000, for the faithful discharge of his duties, with William W. Davis, Samuel Wolverton, and nine others as his sureties. By reason of this suretyship Wolverton was compelled to pay off a judgment, amounting in January, 1882, the time at which it was discharged, to the sum of

$1,179.13. Thereupon Wolverton instituted this action to recover of his co surety, William W. Davis, the full amount so paid. In his amended declaration he sets out the foregoing facts; alleges the insolvency of Thomas K. Davis; and avers that he became a surety in the bond at the request and upon the promise of the said William W. Davis that he would indemnify him against any loss resulting from his suretyship. In the progress of the trial the plaintiff, Wolverton, offered to introduce witnesses to prove that, prior to the execution of the before-mentioned bond, the defendant and Thomas K. Davis agreed orally that the defendant, William W. Davis, should be deputy of Thomas K. Davis; that they would divide the profits of the office between them; and that the said Thomas K. Davis and William W. Davis were each to furnish sureties in the said official bond of Thomas K. Davis as sheriff. And that, in pursuance of said agreement, the defendant requested the plaintiff to become surety in the said bond, and orally promised the plaintiff that if he, the plaintiff, would become one of the sureties on said bond, that he, the defendant, would indemnify him against all loss arising therefrom; and that he was induced to sign the bond by reason of this promise. But the court excluded the evidence, being of opinion that it was not admissible to prove a liability on the defendant for the whole amount, because the promise was not in writing.

It is therefore upon exceptions to this ruling of the circuit court that the case is before us for review; and a more difficult question for judicial decision, if the mere weight of authority be looked at, can scarcely be imagined; for in England, even at this day, and notwithstanding the decision of Vice-Chancellor Malins, in *Wildes* v. *Dudlow,* 23 Wkly. Rep. 435, the authorities cannot be reconciled, and in America the authorities would seem to be about evenly balanced, there being the decision of " eight States [see 3 South. Law Rev. 444] at one end of the scale to weigh against eight at the other." And see, also, on this subject, Throop, Verb. Agr. 459 *et seq.,* where all the cases are

reviewed.    It is believed, however, that no matter what may be
the law, where the promisor is also a surety—a point to be pres-
ently discussed—that the result of the authorities as a whole is
as stated by the learned editor of Smith's Leading Cases in his
notes to *Birkmyr* v. *Darnell*, Vol. 1, p. 326, that a promise by a
stranger to the debt to indemnify a surety is *prima facie* within
the statute, because the principal is bound by an implied obliga-
tion to do that which the promisor agrees to do expressly, and
the promise is therefore really to answer for default of the prin-
cipal.    1 Smith, Lead. Cas. (8th Amer. Ed.) pt. I, 538 ; *Green* v.
*Cresswell*, 10 Adol. & E. 453 ; *Cripps* v. *Hartnoll*, 31 Law J. Q.
B. 150 ; *Kingsley* v. *Balcome*, 4 Barb. 131 ; *Baker* v. *Dillmann*,
12 Abb. Pr. 313 ; *Easter* v. *White*, 12 Ohio St. 219 ; *Kelsey* v.
*Hibbs*, 13 Ohio St. 340 ; *Brown* v. *Adams*, 1 Stew. 51 ; *Brush* v.
*Carpenter*, 6 Ind. 78 ; *Draughan* v. *Bunting*, 9 Ired. 10.; *Simp-
son* v. *Nance*, 1 Speer, 4 ; *Bissig* v. *Britton*, 59 Mo. 204.    And
certainly, upon the reason of the thing, this must be so ; for not
only does such a case fall within the mischief intended to be
remedied by the statute, but it is within the words also.    The
promise, in substance and effect, is this: "If you will become
bound as surety for this sheriff, I will save you harmless from
the consequences of your suretyship."    And, to use the vigor-
ous language of Lord Denman, in *Green* v. *Cresswell, supra,* "if
there had been no decisions on the subject, it would appear im-
possible to make a reasonable doubt that this is answering for
the default of another."    But it is said by some of the text
writers, and such is the position taken by the defendant in error
in this case, that whenever the promisor is a surety also, and
therefore answerable for the default of the principal independ-
ently of his promise, the law is otherwise ; and that any en-
gagement which he may make that it shall be paid, or that the
surety shall not be compelled to pay it, must be regarded as
contracted on his own behalf, and not for the default of the
principal.    But we do not think that there is any real founda-
tion for any such distinction, and certainly none such is sanc-

tioned by the leading cases of *Thomas* v. *Cook*, 8 Barn. & C. 728, and *Green* v. *Cresswell*, 10 Adol. & E. 153, although in the last-mentioned case it was brought to the attention of the court by counsel in the course of the argument that in *Thomas* v. *Cook* the defendant was liable upon the bond, independently of the promise upon which he was sued.　The fact is that while, in the large majority of the cases where the promisor was also a surety, the promise has been held not to be within the statute, that circumstance does not appear to have been relied upon as the ground of decision.　The true question to be determined in every such case is, as announced by the supreme court of Missouri in *Bissig* v. *Britton*, *supra*, where the promise amounts to an original undertaking, and is supported by a direct consid-eration, or is collateral in its character, and depends upon some act to be admitted or performed by some third person.　*Draughan* v. *Bunting*, 9 Ired. 10 ; 1 Wms. Saund. 211*c*.　Applying this test to the case in hand, it seems to us clear that the promise of indemnity made by the defendant is within the statute, and not capable of enforcement.　It follows that the judgment of the circuit court of Prince William county was right in only holding the defendant, Davis, liable for his aliquot share of the loss occasioned by the default of his principal, and that the same must be affirmed.

JUDGMENT AFFIRMED.