# Richmond

## ALPHIN V. LOWMAN.

November 20, 1913.

1. CONTRACTS—*Promise to Become Surety—Indemnity—Statute of Frauds—Case at Bar.*—A promise by a surety that he will indemnify another if he will become co-surety with him on the debt of a third person is an original undertaking and not within the statute of frauds. In the case at bar, the promise, which was held to be an original undertaking, was in the following words: "Go ahead and endorse it; you need not be uneasy; Gillespie" (the principal) "is all right. If he did not have a thing, you will never have a dollar to pay as long as I have got a dollar's worth of property." *Wolverton* v. *Davis*, 85 Va. 64, *disapproved.*

2. CONTRACTS—*Promise to Answer for Debt of Another—Statute of Frauds—Negotiable Instruments Law.*—The principle announced above is not affected by section 68 of the negotiable instruments law with reference to the liability of joint payees or endorsees who endorse negotiable paper. The object and purpose of that section is only to give statutory force to a principle already established. That section establishes the *prima facie* order in which endorsers are to be held liable, but among themselves they are permitted to show that they have agreed otherwise. The clause with respect to joint payees or endorsees was added, not to deprive them of the right to prove by evidence *aliunde* that they have made an agreement among themselves which varied the liability imposed by law, but out of abundant caution to negative the conclusion that they were to be liable in the order in which they became endorsers, for when there are two or more joint endorsers, it is apparent that the mere affixing of their signatures must have been successive one after the other.

Error to a judgment of the Circuit Court of Bath county in an action of assumpsit. Judgment for the plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*George A. Revercomb* and *John W. Stephenson & Son,* for the plaintiff in error.

*John T. Delaney* and *H. H. Byrd,* for the defendant in error.

KEITH, P., delivered the opinion of the court.

The Citizens National Bank of Covington, Va., held two notes, one for $3,000 and one for $5,000, drawn by one Gillespie and made payable to Alphin, Blakey and Lowman as joint payees. These notes were renewed from time to time, but ultimately went to protest. Suit was brought upon them and judgment recovered, upon which executions were issued and placed in the hands of the sheriff, who levied upon the property of Alphin, Blakey and Lowman. The property of Lowman which was levied upon was sold and brought $988.90; that of Blakey brought $216, and the balance of the judgment was paid by L. C. Alphin; Gillespie, the principal having in the meantime become a bankrupt. Lowman then instituted an action of assumpsit against Alphin to recover the amount which he had paid, and a like suit was instituted by Blakey.

To these suits Alphin pleaded non-assumpsit, and a special plea, in which he claimed that Lowman, Blakey and he were joint endorsers on the notes, and as between themselves were each liable for one-third of the judgments and executions, and in this special plea Alphin set up the amount due him and asked that judgment be given against Lowman for the sum of $1,904.53 2-3, which he claimed he had paid for Lowman, the plaintiff, on said executions.

At the trial Lowman proved that there was a verbal agreement between himself and Blakey, on the one hand,

and L. C. Alphin, on the other, whereby Alphin was to be responsible as between the endorsers for the whole of said notes, and was to stand liable for any amount that might be asserted against the plaintiff by reason of his becoming an endorser upon said notes. The specific promise was about in this form: That when Alphin approached Blakey and Lowman and requested them to become joint payees or endorsers with him upon the note, he said to them: "Go ahead and endorse it; you need not be uneasy, Gillespie is all right. If he did not have a thing, you will never have a dollar to pay as long as I have got a dollar's worth of property."

The plaintiff in error objected to the admission of evidence tending to prove the verbal promise, and after the evidence was concluded the court at the instance of the plaintiff gave the following instruction:

"The court instructs the jury that they shall find for the plaintiff if it has been proven by a preponderance of the evidence that on or about April 26, 1906, the plaintiff at the request of the defendant endorsed the notes of C. D. Gillespie for $5,000.00 and $3,000.00 in order to help the defendant to get the Citizens National Bank of Covington, Virginia, to loan said Gillespie the sum of $8,000.00; and that at the time the plaintiff endorsed the said notes, the defendant represented unto him and assured him that if he would endorse said notes he would never have to pay a cent on them as long as he—the defendant—owned a dollar's worth of property."

The plaintiff in error objected to the giving of this instruction; and, the jury having rendered a verdict on behalf of the plaintiff, plaintiff in error moved to set it aside, which the court refused to do and entered the judgment which is now before us.

The entire defense of plaintiff in error turned upon the question, whether or not the promise which the evidence

shows that he made to Blakey and Lowman, and which in-
duced them to become payees and endorsers of the notes,
is within the statute of parol agreements, commonly known
as the statute of frauds.

It may be well to state before going further that while
both of these notes were originally given to the Citizens
National Bank of Covington, Va., one of them—the $5,000
note—was finally transferred to the Bath County National
Bank; but this circumstance we regard as immaterial, as
the same rights and duties remain in the parties to the
transaction when the note is in the hands of the Bath
County National Bank as attached to it when in the hands
of the first holder.

The question for decision is whether the promise made by
Alphin, that he would save Lowman harmless if he would
join him as endorser upon the note drawn by Gillespie,
is within the statute of parol agreements, as being an un-
dertaking to answer for the debt or default of another, or
whether it is an original undertaking or promise upon the
part of Alphin to answer for his own debt?

The statute reads as follows: "No action shall be brought
in any of the following cases:  .  .  .    Fourth, To charge
any person upon a promise to answer for the debt, default,
or misdoings of another;  .  .  .    Unless the promise,
contract, agreement, representation, assurance, or ratifica-
tion, or some memorandum or note thereof, be in writing
and signed by the party to be charged thereby, or his agent;
but the consideration need not be set forth or expressed in
the writing, and it may be proved (where a consideration
is necessary) by other evidence." Code, sec. 2840.

It is earnestly contended by the plaintiff in error that
the decision of this question is controlled by section 68 of
the Negotiable Instruments Law, which reads as follows:
"As respects one another, indorsers are liable *prima facie*
in the order in which they indorse; but evidence is admis-

sible to show that as between or among themselves they have agreed otherwise. Joint payees or joint indorsers who indorse are deemed to indorse jointly and severally;" the contention being that the statute having declared that joint payees or joint indorsers who indorse are to be deemed as having indorsed jointly or severally, no evidence is admissible to show a different order or extent of liability; but to this argument we cannot accede.

The object and effect of that section is but to give statutory force to a principle already established.

In *Bank of United States* v. *Bierne,* 1 Gratt. (42 Va.), at p. 271, 42 Am. Dec. 551, the law upon this point is thus stated: "The legal effect of several successive endorsements is that each endorser has a right to look for indemnity to all the endorsers who precede him, whether they endorse for accommodation of the drawer or for value received; unless there be an agreement *aliunde,* different from that evidenced by the endorsements." Citing *Chalmers* v. *McMurdo,* 5 Munf. (19 Va.) 252, 7 Am. Dec. 684, and *Bank* v. *Vanmeter,* 4 Rand. (25 Va.) 553. "By a joint endorsement," says the same case, "for accommodation of the drawer, all the endorsers are co-sureties, bound to contribution; and if such an endorsement had been made in this case, Beirne would have a right, by virtue thereof, to call on the others to share the burden; unless there was an agreement, proved by evidence *aliunde,* that he should bear the whole, or more than an aliquot part."

The first clause of the section under consideration establishes the *prima facie* order in which endorsers are to be held liable, but among themselves they are permitted to show that they have agreed otherwise. The clause with respect to joint payees or joint endorsees was added, not to deprive them of the right to prove by evidence *aliunde* that they have made an agreement among themselves which varied the liability imposed by law, but we think out of

abundant caution to negative the conclusion that they were to be liable in the order in which they became endorsers, for when there are two or more joint endorsers, it is, of course, apparent that the mere affixing of their signatures must have been successive one after the other.

The principal defense, however, is that the promise relied upon is within the statute above quoted, and can only be maintained when evidenced by a written momorandum.

It is amazing how language, apparently so plain, should have been the cause of such interminable controversy and contrariety of opinion. Among the earliest cases dealing with the subject is that of *Thomas* v. *Cook,* 8 Barn. & C. 728, in which it was held that such a promise was not within the statute and could be proved by oral evidence. Shortly thereafter, in the case of *Green* v. *Cresswell,* 10 Adol. & E. 453, a contrary conclusion was reached, and *Thomas* v. *Cook* was overruled. The conflict between these two cases has led to the diversity of opinion which exists among the States of the Union; and, without a particular discussion of the English cases which have followed those cited, it may be conceded that subsequent English decisions have settled the law within their jurisdiction in accordance with *Thomas* v. *Cook.* It may be further conceded that the American cases, in number at least, preponderate upon the same side of the controversy; but among the cases which maintain that such promises of indemnity are not within the statute of frauds the most discordant reasons are given—reasons as irreconcilable among themselves as they are to those given in cases which adopt the opposite conclusion. The principal controversy seems to be waged around the proposition, whether the promise of indemnity is an original or a collateral promise, —whether or not, in the case before us, the promise of Alphin was to answer for his own debt, default or miscarriage, or was collateral to the promise of Gillespie to pay

the debt which he owed to the bank. Without doubt the
primary obligation to pay the debt rested upon Gillespie.
If he discharged that obligation, the debt was satisfied and
no burden was imposed upon the sureties or endorsers. If
Gillespie failed to pay the debt, then the obligation arose
and the duty devolved upon the sureties.

In *Wolverton* v. *Davis*, 85 Va. 64, 6 S. E. 619, 17 Am. St.
Rep. 56; the question was before this court, only three
judges being present. In that case Thomas K. Davis was
elected sheriff of his county and executed an official bond
with W. W. Davis and Samuel Wolverton and others as
his sureties. W. W. Davis had requested Wolverton to
execute the bond as a surety, and promised orally to in-
demnify him against any loss arising from the suretyship.
By reason of the default of the sheriff, Wolverton had to
pay a sum of money as such surety. He sued W. W. Davis
on the parol promise of indemnity to recover that sum.
At the trial he offered evidence of the parol promise, which
the court excluded. There was a judgment for the de-
fendant and Wolverton appealed. The judgment was af-
firmed, the court resting its opinion chiefly upon *Green* v.
*Cresswell*, 10 Adol. & E., *supra*.

It appears, therefore, that that case is in principle identi-
cal with the one before us. It is true that *Wolverton* v.
*Davis* was with respect to the liability of sureties upon a
bond, while in the case before us it is as to the liability
*inter sese* of endorsers; but the same principles are be-
lieved to apply to both cases.

In Smith's Leading Cases (8th Am. Ed.), p. 538, after
discussing a number of cases bearing upon the subject, it
is said: "Amidst the diversity of decision, it may be diffi-
cult to discover the true principle, but the result of the
authorities, as a whole, seems to be as follows: A promise
by a stranger to the debt, to indemnify a surety, is *prima
facie* within the statute, because the principal is bound by

an implied obligation to do that which the promisor agrees to do expressly, and the promise is, therefore, really to answer for the default of the principal. When, however, the promisor is directly or indirectly answerable for the debt independently of the promise, any engagement which he may make, that it shall be paid, or that the surety shall not be compelled to pay it, will be regarded as contracted on his own behalf, and not for the debt or default of another in the sense in which the term is used in the statute."

Now in the case before us the promisor, Alphin, is not a stranger to the debt, but is answerable for the debt, independently of the promise to Lowman, and, therefore, when he undertook that Lowman should not be compelled to pay it, he is to be regarded as contracting in his own behalf, and not for the debt or default of another.

In *Barry* v. *Ransom*, 12 N. Y. 462, Judge Denio, delivering the opinion of the court, held, after citing different adjudications upon the point, that those where the promisor was himself bound for the third person's default are uniform in holding that the contract is not affected by the statute.

In Throop on the Validity of Verbal Agreements, section 474, after an exhaustive consideration of the cases bearing upon the question, it is stated: "As the result of the conflict of authority upon this question, nothing can be regarded as definitely settled; except, perhaps, that where the promisor and the promisee are about to unite in an instrument as sureties for the third person, the promise to indemnify is not within the statute. With respect to the weight of argument, the side to which the balance preponderates is even more difficult to discover. If the question was merely whether the general policy of the statute embraces such cases, probably few lawyers would hesitate to answer it in the affirmative."

Treating on this subject, at section 162, Browne on the Statute of Frauds (5th Ed.), uses the following language:

"It would be unprofitable to trace the course of the American decisions here cited. It has manifestly resulted in the rejection, by the great preponderance of authority, of the doctrine of *Green* v. *Cresswell,* and the acceptance of the doctrine of *Thomas* v. *Cook,* a result reached after much vacillation on the part of the courts of the same State, and not, it must be confessed, by reference to any clear and satisfactory ground of principle. Indeed, most of the decisions which reject the doctrine of *Green* v. *Cresswell* waive altogether the question of principle, and put it as a matter setttled by authority that the 'promise to indemnify' is not within the statute. In other cases it is put upon the ground that the plaintiff makes his engagement, relying upon the defendant's special promise, and not upon the third party's implied liability; that the former and not the latter is the foundation of the special contract; and that the decisive question is to whom credit was given by the plaintiff. But as we shall have occasion to see hereafter, the application of the statute cannot safely be determined by the consideration that the plaintiff relied upon one obligation to himself rather than upon another; or even that he relied wholly upon the obligation of the defendant's special promise, giving 'credit' solely to him, if still a third party was really liable to the plaintiff to the same extent."

In 20 Cyc. pp. 178-9, it is said: "In England it is practically settled that if one person, at the request of another and on his oral warranty of indemnity against loss, assumes a responsibility for the discharge of a third person's obligation to a fourth, he may recover against the guarantor, although there is on the part of the third person a coexistent implied obligation to indemnify the promisee; and the weight of authority in this country is in accordance with the English view. In many States, however, a contrary view has been adopted, and a promise of indemnity

29

given under such circumstances is held to be within the statute."

One of the most recent cases we have seen is that of *Rose* v. *Wollenberg,* 31 Oregon, 1269, 44 Pac. 382, 39 L. R. A. 378, 65 Am. St. Rep. 826, in which it is held that a contract between co-sureties fixing the proportion and extent of their several or correlative liability as between themselves is not within the statute of frauds. The court in its opinion said: "Seek where you will for a plausible footing upon which to found the obligation so as not to come within the purview of the statute of frauds, the distinction taken in *Green* v. *Cresswell,* of *Thomas* v. *Cook,* that the promisee became likewise bound upon the obligation with the promisor, as co-sureties, and for this reason, if not also for the reason upon which the second class is supported—that it is not an undertaking with the creditor —the indemnity is not within the statute, whether adequate or not, has taken deep hold in the judicial mind, and the undoubted weight of authority in this country is grounded upon it. Indeed, the doctrine is even regarded as settled. Mr. Throop, in his treatise on the Validity of Verbal Agreements (section 474), says: 'As the result of the conflict of authority upon this question (speaking generally of contracts of indemnity against a surety's liability), nothing can be regarded as definitely settled, except, perhaps, that, where the promisor and promisee are about to unite in an instrument as sureties for the third person, the promise to indemnify is not within the statute.' If one co-surety can, by a verbal undertaking, indemnify another in whole against the obligation of the latter, without suffering the interdiction of the statute, he may also in part, as the greater includes the less; and thus it is that co-sureties may, by contract, agreement, or understanding between themselves, limit and fix the proportion and extent of their several or correlative liability, and it is competent to es-

tablish the agreement by parol. So we conclude that it was competent for the plaintiff and defendant to enter into such a contract or agreement as is set forth in plaintiff's complaint and the fact that it is not in writing cannot be taken as an objection against its enforcement."

Turning for a moment to section 68 of the Negotiable Instruments Law, already cited, it is to be observed that the right of endorsers to show the order and extent of their real liability among themselves is recognized by the statute, a right which has been fully established by the decisions. See *Bank* v. *Beirne, supra.* And speaking of this principle, at section 475, Throop on Verbal Agreements says: "It cannot be restricted within the bounds implied by the rule, that several sureties upon the same instrument may regulate by contract their liability to contribution. For if it will suffice to defend an action for contribution, in favor of the verbal promisor against the promisee, we fail to see upon what principle it will not also sufficie to maintain an action in favor of the promisee against the promisor to recover the whole amount of damages which the plaintiff has sustained through a breach of the verbal promise. And no substantial reason is perceived why the right to maintain such an action should depend merely on the fact that the plaintiff and the defendant had united in the execution of the same instrument."

We have not undertaken to discuss the various authorities, but have contented ourselves with stating what seemed to be beyond question, that the great weight of authority has followed the English decision of *Thomas* v. *Cook, supra,* and held that such a promise of indemnity as that with which we are dealing is not within the statute of frauds.

There are cases of great weight which hold to the contrary. Among the most notable are *May* v. *Williams,* 61

Miss. 125, 48 Am. Rep. 80; *Macey* v. *Childress*, 2 Tenn. Chy. 438; *Draughan* v. *Bunting*, 31 N. C. 10; *Bissig* v. *Britton*, 59 Mo. 204, 21 Am. Rep. 379; *Hartley* v. *Sanford*, 66 N. J. Law 627, 50 Atl. 454, 55 L. R. A. 206. The arguments pro and con are well balanced, but the authorities, as we have more than once said, strongly preponderate in favor of the validity of such agreements. We have not deemed it profitable to cite or comment upon the wilderness of cases touching the subject discussed, but have been content to ascertain and to state in what direction they preponderate. Those who desire to explore the matter still further will find them duly mustered and arrayed in Browne on Stat. of Frauds (5th Ed.), sec. 161-c; Throop on Validity of Verbal Agreements, sec. 440-473; and most recently in 20 Cyc. p. 178.

Upon the whole case, it is not without hesitation that we have reached the conclusion that the case of *Wolverton* v. *Davis, supra,* must be disapproved, and the judgment of the circuit court affirmed.

*Affirmed.*